476 P.2d 869

Jack D. WILLIAMS, dba Williams Truck-
ing Co., Appellant,

v.

A. J. BAYLESS MARKETS, INC., an Ari-
zona corporation, Appellee.

No. 1 CA–CIV 1165.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 24, 1970.

Rehearing Denied Dec. 24, 1970.

Review Denied Feb. 2, 1971.

Hughes, Hughes & Conlan, by John C.
Hughes, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Kenneth J. Sherk and Hiram A. Cannon, Phoenix, for appellee.

STEVENS, Judge.

The parties to this appeal were the parties to the trial in the Superior Court. Jack D. Williams dba Williams Trucking Company, hereinafter referred to as Williams, was the plaintiff. A. J. Bayless Markets Inc., an Arizona corporation, herein referred to as Bayless, was the defendant. The Williams claim arose out of the services he rendered in hauling fill used in connection with the construction of a Bayless Market. He was not paid for his services. He filed a notice and claim of lien. The suit to foreclose the lien was tried to the court with a jury. The trial court directed a verdict in favor of Bayless. Bayless was not called upon to present its defenses. This appeal followed.

Bayless was desirous of constructing a market in the vicinity of Bell Road and Cave Creek Road. Initially the property was owned by Mr. and Mrs. Sollomi. On 2 January 1965 the Sollomis and Bayless entered into a lease arrangement calling for the construction of the market. A memorandum of the lease was recorded in the office of the county recorder on 16 March 1965. For reasons not material to this opinion, the arrangement was not consummated. Bayless purchased the property. This transaction is evidenced by a warranty deed recorded on 8 December 1965.

On 23 December 1965, Homes & Son Construction Company, a corporation, hereinafter referred to as Homes, in its capacity as a general contractor, applied to the Maricopa County Planning and Zoning Department for a building permit. This application was assigned number 7823–B. There were three Planning and Zoning documents in relation to the permit: the application; the permit; and the "red card." The red card is printed on heavy cardboard having blank spaces for the insertion of information and is posted on the premises which are to be improved. The application and the permit were introduced into evidence as was a blank copy of the red card but we do not have affirmative evidence as to the exact manner in which the blank spaces in the red card were completed. We assume that the blank space on the red card entitled "Permit No." was completed with the above number assigned to the building permit. These observations are set forth for the reason that there is a lack of uniformity in the details of the legal description and the street address of the property when one compares the deed, the application, the building permit and the notice and claim of lien. The application and the permit show Bayless as the owner. No place in the records of Planning and Zoning do we find reference to Sollomi. The red card which was introduced into evidence has no blank space specifically designed to disclose the name of the owner. The application and the permit were for $140,000. There was but one building permit applied for and only one permit was issued in relation to the improvements which are the subject of this opinion.

There was evidence that Homes originally undertook the entire construction on an oral cost plus contract. However, after the foundation, the footings, the stems and the floor were completed, Bayless secured competitive bids for the completion of the building. It is not clear whether these bids were called for in point of time before or after the completion of the pouring of the floor. Several bids were presented and Homes was the successful bidder. A written contract for the completion of the structure was executed. The contract bears the date of 27 May 1966. There is evidence that the final construction payment was made by Bayless to Homes on 21 November 1966. The minutes of the 28 November meeting of the Bayless Board of Directors contains a report that the store "will open this week." The fact of two contracts was a factor considered by the trial court in the granting of the motion for a directed verdict. At the oral argument of the appeal Bayless advised the Court that Bayless abandoned the potential

issues arising out of the two-contract feature of the construction, stating that it had not fully developed this defense in view of the directed verdict.

Pete Horner Excavating, an Arizona corporation, herein referred to as Horner, was a subcontractor under Homes in connection with portions of the work leading up to the pouring of the floor. In connection with this preliminary portion of the work a quantity of fill was required. Williams hauled fill for Horner and performed this work between the 11th and the 21st days of March 1966. Williams computed the value of his trucking services to be $3,591.00. As before stated, the date of the completion of the oral contract phase of the construction project in relation to the formal written contract of 27 May 1966 is not clearly established in the record.

Horner was paid for his subcontract work and became bankrupt without paying Williams. Williams was not successful in his efforts to collect from Homes.

On 5 August 1966 the notice and claim of lien here in question was executed by Williams. It was recorded on 11 August 1966. The notice and claim of lien described the property by reciting a legal description and specifying a street address. The street address corresponded to the one set forth in the building permit. The notice and claim of lien further recited:

"2. That Phillip A. Sollomi and Teresa Sollomi is the name of the reputed owner of said premises and caused said improvement to be constructed.

"3. That the name of the person by whom the labor and materials were ordered was Pete Horner Excavating, subcontractor to Homes & Son Construction."

There were further recitations as to the Williams' contract with Horner, the services performed and the value thereof. The notice and claim of lien further recited:

"5. That the said contract has been duly performed by him, and the construction of said improvements was not completed on the 28th day of July, 1966,

and 60 days have not elapsed since said date."

The Bayless brief filed in this Court admits the service of the notice and claim of lien upon Mr. and Mrs. Sollomi and upon Horner. No dates are specified in the record. Homes was served on 25 August 1966 by serving Mr. Elias M. Romley, its statutory agent. Formal service of the notice and claim of lien was effected on Bayless on 20 January 1967. The notice and claim of lien so served on Bayless was identical to the one recorded on 11 August 1966. The lien foreclosure action was filed on 7 February 1967, a date within the six-month period next following the recording. A.R.S. § 33–998. At all times material to this opinion, Romley was a member of the Bayless Board of Directors, he was an Assistant Secretary of Bayless, he and his law firm were the attorneys for Bayless, but he was not the Bayless statutory agent. Nor was there any proof that on 25 August 1966, Romley was served with any copies in addition to the copy for Homes.

At the close of the first day of the trial and before Williams had rested, the trial judge held a conference in chambers which was reported by the court reporter. The trial judge indicated that he was not impressed with the soundness of the position urged by Williams. Williams made an offer of proof as to the additional matters which he intended to prove. The Bayless motion for a directed verdict was then granted. We do not encourage this procedure. On the other hand, had Williams established each of the items set forth in his offer of proof, it is our opinion that the result would not have been changed. The error, if any, was harmless. Bayless then was not called upon to present its evidence. It is this procedural posture which persuaded Bayless to abandon its "two-separate contract" theory of defense in the presentation to the Court of Appeals.

Under these circumstances we examine the evidence in the light most favorable to Williams. Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702 (1964); Baker v. Walston &

Company, Inc., 7 Ariz.App. 590, 442 P.2d 148 (1968).

We are not called upon to decide whether the building of the Bayless Market under a single building permit with two separate construction contracts, one oral and the other written after a call for bids, created a situation whereby Williams was required to file his notice and claim of lien within 60 days from the date of the completion of the oral portion of the construction contract as distinguished from computing the commencement of the 60-day period from the date of the final completion of the construction. The 60-day provision is found in A.R.S. § 33–993.

■ Williams urges that in view of the service of the notice and claim of lien upon Homes, the general contractor, this service constituted service upon Bayless, the owner. This position is urged by virtue of A.R.S. § 33–981, subsec. B and especially upon that portion of the statute which this Court has emphasized by italicizing.

"B. Every contractor, sub-contractor, architect, builder or other person having charge or control of the construction, alteration or repair, either wholly or in part, of any building, structure or improvement, *is the agent of the owner for the purposes of this article,* and the owner shall be liable for the reasonable value of labor or materials furnished to his agent."

(Emphasis Supplied)

The Article referred to in the section is Article 6 entitled "Mechanics' and Materialmen's Liens," being a subportion of Chapter 7 which is entitled "Liens" all being contained within the Code's Title 33 entitled "Property." Article 6 embraces A.R.S. § 33–981 to 33–1001, both inclusive.

We are unable to agree with the Williams position. Horner had a personal or monetary obligation to Williams for the services which Williams performed under his contract with Horner. The performance by Williams and the reasonable value thereof was lienable by Williams. Homes was an agent of Bayless in that persons with whom Homes had a direct contract had the same relation as the Horner-Williams relationship. The nature of the agency created by the statute is qualified and limited to the establishment of liens upon the property of the owner. The contractor is the agent of the owner with the limited statutory authority to bind the property of the owner for the reasonable value of services and/or materials as may be furnished in enhancing the value of the owner's property pursuant to the contractor's contract with the owner. The statute does not constitute the contractor the general agent of the owner for all purposes. Harbridge v. Six Points Lumber Company, 17 Ariz. 339, 152 P. 860 (1915); Keefer v. Lavender, 74 Ariz. 24, 243 P.2d 457 (1952). All Williams could acquire as to Bayless would be his enforceable lien rights. A.R.S. § 33–999. We hold that the "agency" created by § 33–981 was not that broad agency which includes the right to serve the owner by serving the contractor. Nor was there proof of an attempt to serve Bayless by the fact of service upon Homes.

■ Williams presented to the trial court the minutes of the meetings of the Bayless Board of Directors which related to the construction of the market and the various phases thereof. Romley participated in most of the Directors' meetings. Williams urges that when Homes was served by serving Romley as the Homes statutory agent that Bayless was placed on notice as effectively as though Bayless had been served with a copy of the notice and claim of lien. We do not agree. Romley testified as to his office procedures in notifying Homes after he had been served with the notice and claim of lien. Romley had no independent recollection of the content of the notice and claim of lien. Even had he mentally related the notice and claim of lien to the construction in question, this would not have been service upon or notice to Bayless. We quote with approval from Fletcher:

"By the great weight of authority * * since the directors do not individually represent the corporation, and have no

power t bind it, except collectively and as a board, notice of facts casually acquired by individual directors, when they do not communicate their knowledge to the other directors or officers, and do not act officially in the matter, is not notice to the corporation. 'It follows that *where it is sought to charge a corporation with notice communicated to or knowledge acquired by a single director, when not officially engaged for the corporation, it must be proved as a fact that he has communicated the notice to the board, or to some officer or agent of the corporation entitled to receive it,* and whose knowledge of the fact would affect the corporation with constructive notice of it.' " 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 808 at 70–72 (rev. vol. 1965). (Emphasis Supplied)

The most critical phases of this litigation turn upon the adequacy of the notice and claim of lien and the timeliness of the service on Bayless on January 1967. We quote a portion of A.R.S. § 33–993 as follows:

"In order to impress and secure the lien provided for in this article, every original contractor, within ninety days, and every other person claiming the benefits of this article, within sixty days after the completion of a building, structure or improvement, or any alteration or repair thereof, shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder of the county in which the property or some part thereof is located, *and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county*. The notice and claim of lien shall be made under oath by the claimant or some one with knowledge of the facts, and shall contain:

\* \* \* \* \* \*

"2. *The name of the owner or reputed owner of the property concerned, if known,* and the name of the person by whom the lienor was employed or to whom he furnished materials. (Emphasis Supplied)

The evidence discloses that Williams had been in the trucking business since 1946 and that he owned and used approximately 50 trucks in his business operation. The notice and claim of lien was prepared by his attorney. Williams gave the attorney some information. In relation to his conferences with his attorney in connection with the preparation of a notice and claim of lien, Williams testified:

"Q. Didn't you give him the owner of the premises, the name of the owner?

"A. If he asks me for it and I know it, I do.

"Q. Did you give a legal description of the property?

"A. If he asks for it.

"Q. I take it you wouldn't volunteer if he didn't ask for it?

"A. No sir That is his job.

"Q. I see. I believe you testified that you have told your lawyer that Mr. Phillip A. Sollomi and Theresa Sollomi were the owners of that property, is that correct?

"A. I don't recall whether I told him that or not.

"Q. And that you had gotten their names off the building permit that was posted on this project out at Cave Creek and Bell Road, isn't that correct?

"A. I got the description. I don't remember getting any names."

His deposition answer in relation to the use of the name Sollomi was presented to the Court as follows:

"Question: I mean, you have indicated that on this claim of lien that you verified under oath. I take it you felt that was correct at the time, at that time? Answer: It was checked out from the building permit that was on the property. I didn't know who owned the property, and when they checked it out, this is what they came up with. Question: When you

say, 'They checked it out,' who is they? Answer: Well, I turned it over to my lawyer."

He further testified:

"Q. Did you ever tell the attorney the Sollomis' were the owners of this property?

"A. I could have.

"Q. Did you ever see the building permit there with their names on it?

"A. Not that I recall.

"Q. Do you have any idea how you got their names off the building permit?

"A. It was either someone in my office or someone in Mr. Hughes' office come up with these names from the records."

There was no evidence presented as to the basis for the use of the names of Mr. and Mrs. Sollomi as the reputed owners. It is our opinion that if the names used in the notice and claim of lien are not the names of the owners, then the plaintiff-lien claimant, at the trial of the lien foreclosure action, has the burden of establishing a reasonable basis for the use of the name of a reputed owner. This burden was not met. The statute relating to materialmen's liens must be strictly followed in order to perfect such a lien. Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956). The burden is on the plaintiff at the time of trial to either allege his compliance with the essential requirements of the statute, and if his compliance is denied, prove it by competent evidence or show that there was a legal excuse for having failed to do so. American Coarse Gold Corporation v. Young, 46 Ariz. 511, 52 P.2d 1181 (1935).

It is noted in the underscored portion of that part of A.R.S. § 33–993 hereinbefore quoted that in addition to the recording, "within a reasonable time thereafter (the lien claimant shall) serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county." Subparagraph two above quoted, uses the words "owner or reputed owner." We can visualize a situation where, by reason of the press of time, the claimant may need to resort to naming a "reputed owner" in the claim. We can visualize a situation wherein a lien claimant, after reasonable inquiry, believes that he knows the name of the owner but due to the complexity of the title or the difficulty in securing a precise and accurate legal description, he can only name the reputed owner. The lien statute does not require the lien claimant to be an expert in title matters. Only reasonable efforts are required and if they result in substantial compliance wtih the statutory requirements there would be a valid lien.

■ Williams urges that the issue as to whether the use of the names of the Sollomis as the "reputed owners' created a fact question and that reversible error arose when Bayless put in issue the reasonableness of the use of the name of a reputed owner and the issue was not submitted to the jury. Williams urges that to serve the actual owner prior to the expiration of the six-month period is, in law, a service upon the owner "within a reasonable time" after the recording of the lien, or at least that this is also a fact question for the jury. Under the circumstances of this case we do not agree with these contentions.

Each case must be decided on its own facts. In relation to the building of a large building which requires many months of construction, one time period may be reasonable, whereas in relation to the construction of a building requiring but a short time to complete, another time period may be reasonable. These situations may, in a particular case, be fact questions and in another case may be resolved as a matter of law. We do not attempt to lay down firm and positive guidelines in this opinion except to say that we hold that it is not in every instance that service of the true owner within the six-month period following the recording, this being the time allowed for the filing of suit next following the recording, would be a "reasonable time thereafter."

**354**

A review of the record in the trial court discloses the following salient matters: There was no showing as to the reason for naming a fictitious owner in the notice and claim of lien; the red card at the building site furnished a ready source of information as to the name of the owner, namely the records at the Planning and Zoning office; that building project was completed some time before an effort was made to serve the notice and claim of lien on Bayless, the owner, whereby Bayless was prejudiced in that it paid Homes the balance of the money due under the construction project; there was no showing as to the reason for the delay in ascertaining the name of the owner following the recording of the notice and claim of lien; and Williams was a contractor of many years of experience. We hold that when the trial court decided this case by directing a verdict for Bayless, the trial court did not err.

The judgment is affirmed.

· DONOFRIO, P. J., and HAIRE, J., concur.