561 P.2d 750

Donald P. LEWIS and Eleanor A. Lewis, husband and wife, First State Service Corporation, Trustee, and Tucson Federal Savings and Loan Association, a corporation, Appellants,

v.

MIDWAY LUMBER, INC., an Arizona Corporation, John Klassen and Company, a corporation, D & N Construction Company, a corporation, A. L. McCune Drywall Co., Inc., a corporation, and Preston's Insulation and Roofing Service of Tucson, Inc., an Arizona Corporation, Appellees.

No. 2 CA–CIV 2141.

Court of Appeals of Arizona, Division 2.

Jan. 3, 1977.

Rehearing Denied Feb. 8, 1977.

Review Denied March 8, 1977.

Robertson, Molloy, Fickett & Jones, P. C. by Russell E. Jones, Tucson, for appellants.

Charles F. Sullivan, Tucson, for appellees Midway Lumber, Inc., John Klassen and Co., and D & N Construction Co.

Law Offices of Charles J. Rondelli by Michael Hornisher, Tucson, for appellee A. L. McCune Drywall Co., Inc.

Vincent E. Odgers, Tucson, for appellee Preston's Insulation and Roofing Service of Tucson, Inc.

## OPINION

HOWARD, Chief Judge.

This is an action to foreclose materialmen's and mechanics' liens and the only question is whether the liens were perfected within the time and in the manner provided by the statutes. The case was tried to the court sitting without a jury which made findings of fact and conclusions of law and rendered a judgment providing that the deed of trust of First State and Tucson Federal had priority as a lien on the subject property to the extent of $27,700 and the liens of the appellees Midway, Klassen, D & N Construction Company, McCune and Preston were valid liens on the subject property and had a second priority. The lien of the deed of trust of Fist State and Tucson Federal to the extent that it was not granted first priority was granted third priority. The liens of the appellees were directed by the judgment to be foreclosed in the manner provided by law.

The facts show that on June 20, 1972, King Construction Company purchased and became the record titleholder of Lot 299 of Bel Air Ranch Estates, a subdivision of Pima County. King Construction Company, immediately after acquiring record title executed a realty mortgage in favor of Tucson Federal as mortgagee to secure a promissory note executed by King in favor of Tucson Federal in the sum of $27,700, the amount of the construction loan from Tucson Federal to King Construction. This mortgage was recorded immediately after recording the deed vesting title in King Construction. At the time the construction mortgage was recorded, no work had been done on the subject property which was entirely vacant.

King Construction then entered into separate oral contracts with each of the lien claimants. These contracts all concern the construction of a residence on Lot 299.

Midway Lumber furnished building materials to King which were utilized in the construction of the residence. These materials were furnished between September 16, 1972 and December 21, 1972.

Klassen furnished labor and materials for the installation of kitchen cabinets, bathroom vanities and countertops to the property. This labor and materials were furnished on December 20th and 21st, 1972.

McCune furnished drywall and acoustical labor to the residence during the period November 18th through November 27th, 1972.

Preston furnished the labor and materials for the insulation of the residence on October 24, 1972.

D & N Construction constructed a septic system which was actually incorporated on the property. The date on which it was completed was a trial issue and the court

found as a fact that the work on the septic system was completed on January 18, 1973.

On February 1, 1973, King Construction deeded the property to the Lewises. This deed was recorded the same day as was a deed of trust executed by the Lewises as trustors in favor of First State as trustee and Tucson Federal as beneficiary. The deed of trust and the promissory note executed in connection therewith was for the sum of $36,900. $27,700 of this loan was used to satisfy the construction loan.

King Construction Company failed to pay the total sum due the appellees. On March 30, 1973, Midway Lumber recorded its notice and claim of lien and on April 19th the other appellees did likewise.

Midway, in its notice and claim of lien, stated that King Construction Company and the Lewises were the reputed owners of the property. Klassen, D & N Construction and McCune each stated that King was the owner or reputed owner of the property. The notice and claim of lien recorded by Preston did not set forth who was the owner or reputed owner of the property.

The Lewises were the true owners and owners of record at all times from February 1, 1973 to the date of trial. They both lived on the property continuously from February 1, 1973 until August 1974 when Mr. Lewis obtained work elsewhere. Mrs. Lewis however, resided continuously on the property from February 1, 1973 to the date of trial.

Midway served its notice and claim of lien on both the Lewises and King Construction Company. All the rest of the lien claimants served their notices and claims of lien on King Construction Company alone.

Appellants first attack the court's finding of fact that D & N Construction Company completed its work on the septic system on January 18, 1973. The rule on review is that findings of fact are sustained unless they are clearly erroneous. *Olson v. State,* 12 Ariz.App. 105, 467 P.2d 945 (1970). The evidence as to when the work on the septic system was completed is conflicting. A finding of fact cannot be clearly errone-ous if there is substantial evidence to support it, even though there also might be substantial conflicting evidence. Resolution of any conflict in the evidence is for the trier of fact. *Reliable Electric Co. v. Clinton Campbell Contractor, Inc.,* 10 Ariz. App. 371, 459 P.2d 98 (1969). We therefore shall not disturb the trial court's finding of fact on this issue.

The next question to be decided is whether the appellees timely recorded their notices and claims of lien. The applicable statute A.R.S. § 33–993(A) provides in part:

"In order to impress and secure the lien provided for in this article, every original contractor, within ninety days, and every other person claiming the benefits of this article, within sixty days after the completion of a building, structure or improvement, or any alteration or repair thereof, shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder of the county in which the property or some part thereof is located, and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county. The notice and claim of lien shall be made under oath by the claimant or someone with knowledge of the facts, and shall contain:

1. The legal description of the lands and improvements to be charged with the lien.

2. The name of the owner or reputed owner of the property concerned, if known, and the name of the person by whom the lienor was employed or to whom he furnished materials. . . ."

Subsection B of the foregoing statute states:

"For the purposes of subsection A, 'completion' means actual completion of the work. Completion shall also be deemed to have occurred upon cessation of labor for a period of sixty consecutive days on the property upon which a lien is claimed. . . ."

Appellants do not question whether the notice and claim of lien of D & N Construc-

tion Company was timely recorded, but do claim that the other appellees failed in this respect. Appellants contend that each of the lien claimants was an original contractor under A.R.S. § 33–993. Appellees do not dispute this contention. They differ, however, with appellants as to the meaning of subsection A. The dispute centers on the word "improvement". Appellants contend that when McCune Drywall, installed the drywall in the house under construction, it created an "improvement". Therefore, the ninety-day period began to run when it completed the drywall installation. Appellants urge the same theory as to the other appellees.

Appellees maintain appellants' version of the statute is incorrect and that the ninety-day period did not begin to run until the house was completed, to wit, when D & N Construction completed its work on the septic system.

■ We believe appellees are correct. The time period begins to run after the completion of the subject of the construction. For example, if the subject of the construction is a "building", which has been defined as an edifice constructed for use or convenience as a house, church, shop, etc., attached to and becoming part of the land,[1] the time begins to run when the work on the building is completed. If the subject of the construction is not a building but is a "structure" such as a fence or billboard, the time begins to run upon completion of the work on that structure.

■ Sometimes there may be a doubt as to whether the subject of the work and labor is technically a "building" or a "structure". The legislature has provided for this situation by use of the word "improvement" which means a valuable addition or betterment to real estate such as a building, clearing, drain, fence, etc. *Interstate Lumber Company v. Rider,* 93 Mont. 489, 19 P.2d 644 (1933). Clearing, grading and excavation of land is an "improvement" under a mechanic's lien statute. *Mazel v. Bain,* 272 Ala.

640, 133 So.2d 44 (1961). Thus, if the subject of the construction is a fence the time would begin to run after completion of the work on the fence. Here, the subject of the construction was a residence and the statutory period did not begin to run until the work on the residence was completed. Our view that the word "improvement" was meant as a "catch-all" is fortified by that part of A.R.S. § 33–993 which requires a duplicate copy of the notice and claim of lien to be served ". . . upon the owner of the building, structure or improvement". To adopt appellants' view would be to change the wording of the statute from "completion of a building, structure or improvement" to "completion of their contract". The statute does not admit to such construction.

■ Appellants have cited to us the case of *In re Mayer Central Building Corporation,* 275 F.Supp. 873 (D.C.Ariz.1967) as authority for their position. We note that the federal district court apparently came to the conclusion which appellants now urge us to adopt. We further note that the district court judge set forth no authority or reasoning for his conclusion. In any event, we are not bound by the federal district court's interpretation of our statutes. *Kingsbury v. State,* 27 Ariz. 289, 232 P. 887 (1925) rev'd on other grounds, 28 Ariz. 86, 235 P. 140 (1925); *Parsons v. Federal Realty Corporation,* 105 Fla. 105, 143 So. 912 (1931); *Luken v. Lake Shore & M. S. Ry. Company,* 248 Ill. 377, 94 N.E. 175 (1911); *State ex rel. Sorensen v. Farmers' State Bank,* 121 Neb. 532, 237 N.W. 857 (1931); *Erie Railroad Company v. Steinberg,* 94 Ohio St. 189, 113 N.E. 814 (1916).

Here the ninety-day period began to run on January 19, 1973, the day after the work was completed on the septic system. The appellees' liens were timely recorded.

This brings us to the next problem: Except for Miuway Lumber, did the appellees perfect a valid lien when they named King

---

1. *Rabb v. W. P. Ellison, Inc.,* 89 N.J. Law 416, 99 A. 119 (1916), aff'd, 90 N.J. Law 716, 103 A. 1054 (1917).

Construction Company as the owner or reputed owner in a notice and claim of lien and then served King Construction as the owner, or, in the case of Preston's Insulation, when it completely failed to set forth the name of reputed owner in its notice of claim and lien and served King Construction as the owner? In order to resolve this issue three questions must be posed: How are our statutes on mechanics' liens to be construed? What is the purpose of the statute in question? Will the purpose of the statute be furthered by our decision?

■■ The provisions of A.R.S. § 33–993 must be strictly followed. *Irwin v. Murphey,* 81 Ariz. 148, 302 P.2d 534 (1956); *Williams v. A. J. Bayless Markets, Inc.,* 13 Ariz.App. 348, 476 P.2d 869 (1970). However, the Arizona liens statutes are remedial and to be liberally construed. *Leeson v. Bartol,* 55 Ariz. 160, 99 P.2d 485 (1940); *Kerr-McGee Oil Industries, Inc. v. McCray,* 89 Ariz. 307, 361 P.2d 734 (1961); *Peterman-Donnelly Engineers and Contractors Corporation v. First National Bank,* 2 Ariz. App. 321, 408 P.2d 841 (1965). This means that the steps required by A.R.S. § 33–993 to impose the lien must be followed but in determining what these steps are the court will give the words a meaning which is reasonable, consistent with all the language used, and conducive to the purpose to be accomplished by the enactment of the statute. Thus, substantial compliance not inconsistent with the legislative purpose is sufficient. *Leeson v. Bartol,* supra.

■■ The purpose of the requirement of A.R.S. § 33–993 is to give the property owner an opportunity to protect himself and time to investigate the claim to determine whether it is a proper charge. *Peterman-Donnelly Engineers and Contractors Corporation v. First National Bank,* supra.[2] With this in mind we turn to the provisions of the statute. As noted in *Williams v. A. J. Bayless Markets, Inc.,* supra, the notice and claim of lien must be recorded. Furthermore, the recorded notice and claim of lien must contain the name of the owner or

reputed owner of the property, if known. This requirement is distinct and separate from the service provision which states that the notice and claim of lien must be served within a reasonable time after recording ". . . upon the *owner* of the building, structure or improvement . . .." Note that the service requirement does not state that the lien may be served upon the owner *or reputed owner if known.*

■ The Court in *Williams v. A. J. Bayless Markets, Inc.,* supra, observed, as far as the statements required and the notice and claim of lien are concerned:

"We can visualize a situation where, by reason of the press of time, the claimant may need to resort to naming a 'reputed owner' in the claim. We can visualize a situation wherein a lien claimant, after reasonable inquiry, believes that he knows the name of the owner but due to the complexity of the title or the difficulty in securing a precise and accurate legal description, he can only name the reputed owner. The lien statute does not require the lien claimant to be an expert in title matters. Only reasonable efforts are required and if they result in substantial compliance with the statutory requirements there would be a valid lien." 13 Ariz.App. at 353, 476 P.2d at 874.

The term "reputed owner" has been defined as one who has for all appearances the title and possession of property; one who, from all appearances or from supposition, is the owner of a thing. *Lowell Hardware Company v. May,* 59 Colo. 475, 149 P. 831 (1915). It does not necessarily mean the owner of record although such an owner is a reputed owner. *Block v. Love,* 136 Or. 685, 1 P.2d 588 (1931).

■ The Lewises had been in possession of the premises since at least February 1, 1973. Anyone going upon the premises could clearly see that they were occupied. The record discloses no effort to check with the occupants to determine ownership. Although the statute states that the notice of

2. For a comprehensive annotation on the subject of the sufficiency of the designation of the owner and the notice and claim of liens, see 48 A.L.R.3d 153 et seq.

lien must state the name of the owner, or reputed owner, *if known,* this does not mean that the lien claimants can make no effort at all to determine ownership and then claim that the name of the owner is unknown. Although the lien claimant need not be an expert in title matters, reasonable efforts to ascertain the owner or reputed owner are required. *Williams v. A. J. Bayless Markets, Inc.,* supra.

■■■■ Even assuming that the contents of all of the lien claims in question comply with the statutes, we are still faced with the requirement that the notice and claim of lien must be served upon the owner. We believe this means that service upon the owner of record suffices even if it turns out that the record owner is not the true owner. A lien claimant can only be charged with such knowledge of the ownership of the property as is apparent from the public records. He cannot be required to go behind the public record to ascertain whether a conveyance, complete on its face, is burdened with some secret agreement to reconvey to the real owner. *Bitter v. Mouat Lumber & Investment Company,* 10 Colo. App. 307, 51 P. 519 (1897), aff'd, 27 Colo. 120, 59 P. 403 (1899).

■■■■ In *James Weller, Inc. v. Hansen,* 21 Ariz.App. 217, 517 P.2d 1110 (1973), Division One of this court stated that the vital parts of perfecting a lien are the time elements, the content and the recording. It based this conclusion upon the fact that the statute specifies that the owner shall be served within a reasonable time after recording ". . . if he can be found within the county". The court, however, because of the facts of the case expressly reserved ruling upon whether the lien claimant had a duty to search the record after recording the lien and serve the owner of record. We do not believe that service upon the owner is unimportant. When one considers the lack of preciseness as to the ownership required to be stated in the notice and claim of lien we believe it is even more important, vis-à-vis the purpose of the statute, to ascertain the owner of the property. The fact that owners who reside outside the county are not required to be served, apparently even though their residence may be known, does not detract from the clear requirements of the statute. If the purpose of the statute is to give the owner an opportunity to protect himself by withholding sums due and owing to the contractor and give him time to investigate the claim, how is this purpose served by allowing the lien claimant to ignore the public records and serve someone who has no ownership in the property? When lien claimants do not state the name of the record owner in the notice and claim of lien, which at least gives the owner the opportunity to refer to the index of non-governmental liens required to be set by the county recorder [3] and then compound the situation by not serving the owner of record, is this substantial compliance with A.R.S. § 33–993? We think not.

■■■■ Appellees argue that any failure to follow the statute in this case was not prejudicial. We do not agree. If the default or neglect is material to the perfection of a lien, it is beyond the remedial scope of equity, in the exercise of its usual powers, to protect the lien claimant against the untoward consequences of what may be and probably was his own neglect. The courts cannot read into either the statutes or the claim of lien what is not there, or take from either what is there. If the courts may say that the record owner need not be served, then with equal reason they may hold that any other requisite of the statute need not be observed and followed. We do not perceive this to be the law. See *Irwin v. Murphey,* supra. We hold that the lien of Midway Lumber, Inc. was timely filed and is valid. The liens of the other appellees, although timely filed, were invalid and did not constitute liens upon the property.

The judgment is affirmed as to Midway Lumber, Inc. but reversed as to appellees John Klassen & Company, D & N Construction Company, A. L. McCune Drywall Co., Inc., and Preston's Insulation and Roofing Service of Tucson, Inc. The trial court is

---

**3.** See A.R.S. § 11–462.

ordered to enter a judgment against the appellees John Klassen & Company, D & N Construction Company, A. L. McCune Drywall Co., Inc., and Preston's Insulation and Roofing Service of Tucson, Inc. and in favor of the appellants.

HATHAWAY, J., and HENRY S. STEVENS, Retired Judge, concur.