812 P.2d 1014

**Anna Marie BAN and Ronald Rikkio Ban, Petitioners,**

v.

**The Honorable John M. QUIGLEY, a Judge Pro Tempore for the Superior Court of the State of Arizona, County of Pima, Respondent,**

and

**Mark FRAUENFELD, Real Party in Interest.**

No. 2 CA–SA 90–0157.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 15, 1990.

Review Granted May 21, 1991.

Review Dismissed Oct. 31, 1991.

Ann M. Haralambie, P.C. by Ann M. Haralambie, Tucson, for petitioners.

Curtis & Cunningham by George Haskel Curtis, Tucson, for real party in interest.

## OPINION

FERNANDEZ, Chief Judge.

The natural mother of a child born in November 1985 and the mother's husband seek special action relief from the trial court's order that the real party in interest (the putative father), the mother, and the child submit to a blood test for a determination of the probability of the real party in interest's paternity of the child. Because this case raises a matter of statewide importance and because we conclude that petitioners have no equally plain, speedy, or adequate remedy by direct appeal, we accept jurisdiction and grant relief.

According to the putative father's affidavit, he lived with the mother from July until December 1985, one month after the child's birth. He contends they had been having sexual relations since February 1985. Throughout this period, however, the mother was married to petitioner, her present husband. The husband claims to be the father of the child, whom he has supported and treated as his own since his reconciliation with the mother, apparently sometime in December 1985.

On April 30, 1990, the putative father filed a paternity action. In May the mother moved to dismiss the complaint on numerous grounds, including some of the arguments raised in this special action. The trial court rejected the mother's argument that the statute does not permit the putative father to maintain such an action but found that the petition failed to comply with certain statutory requirements and failed to join the mother's husband, an indispensable party. The court dismissed the complaint without prejudice, and the putative father filed an amended complaint and a motion for blood tests. Petitioners opposed the motion, incorporating their previously filed motion to dismiss. The court granted the motion without an evidentiary hearing on whether the tests were in the child's best interests, as petitioners had requested.

The issues raised are whether Arizona's paternity statute permits a putative father to bring a paternity action only when the child is born out of wedlock and whether the trial court should have made a determination regarding the best interests of the child before allowing the paternity action to proceed and ordering blood tests.[1]

## THE STATUTE

■ Petitioners argue that Arizona's statute does not contemplate the filing of a paternity action by a person claiming to be the child's father when the child is not born out of wedlock. A.R.S. § 12–846(B) provides, in pertinent part, as follows:

The paternity proceeding may also be commenced by the filing of a verified complaint by the mother or father, with the mother or father as plaintiff, or by the guardian or best friend of a child or children born out of wedlock.

The petitioners argue that the phrase "born out of wedlock" modifies all the parties listed and not just the clause, "guardian or best friend of a child or children."

■ In interpreting a statute, we give it a reasonable, rational, and sensible construction that will accomplish the legislative intent. *Mendelsohn v. Superior Court,* 76 Ariz. 163, 261 P.2d 983 (1953). In doing so, we look at the words, the context and subject matter, the effects and consequences of the statute, and other acts that are in pari materia. *State v. McGriff,* 7 Ariz.App. 498, 441 P.2d 264 (1968). Moreover, we construe provisions to harmonize rather than contradict one another "if sound reasons and good conscience allow." *City of Mesa v. Salt River Project Agricultural Improvement & Power District,* 92 Ariz. 91, 98, 373 P.2d 722, 727 (1962). Although we agree that § 12–846, when read alone, is somewhat ambiguous, to give the provision logical meaning and in an attempt to discern the legislature's intent, we refer to A.R.S. § 12–843, which provides, in pertinent part, as follows:

A. Proceedings to establish the maternity or paternity of a child or children and to compel support under this article may be commenced by any of the following:

1. The mother.

2. The father.

3. The guardian, conservator or best friend of a child or children born out of wedlock.

Had the legislature intended to limit proceedings brought by either the mother or father to situations in which the child or children are born out of wedlock, it would have done so by including that phrase in subsections 1 and 2 above. Moreover, we do not believe that a logical construction of the provisions lends itself to the interpretation urged by petitioners. Under their construction, notwithstanding the status of a mother's marriage or whether her husband disavows paternity of the child born during the marriage, the mere fact that the mother was married at the time the child was born would forever preclude her from bringing a paternity action against the individual she claims is the father. Similarly, a

---

1. Petitioners also argue that the putative father is barred by laches from maintaining this action. Although that issue was raised in their motion to dismiss and their answer alleges laches as an affirmative defense, petitioners did not file a new motion to dismiss the amended complaint. Therefore, we do not address their arguments on laches.

putative father would be unable to bring an action to establish paternity of a child born during the mother's marriage to her husband, even if the mother and the husband later separated or divorced or in the event the mother died. We do not believe the legislature intended those results.

We also reject petitioners' argument that the word "father" in the statute was meant to include the presumptive father, that is, the mother's husband, as opposed to the putative father. Although we acknowledge the evidentiary presumption in favor of the husband's paternity, *see State v. Mejia*, 97 Ariz. 215, 399 P.2d 116 (1965), and *Coffman v. Coffman*, 121 Ariz. 522, 591 P.2d 1010 (App.1979), we find no support for this argument in the statute itself. The statute does not define the term "father." The history of the statutory provisions, however, leads us to the conclusion that the term was intended to mean the putative father, presumed or otherwise. Prior to the 1985 amendment to § 12–846, subsection B did not contain the term "father." Such "fathers" or, stated more accurately, individuals claiming to be fathers, were unable to bring an action under the statute to have themselves declared fathers. *Allen v. Sullivan*, 139 Ariz. 142, 677 P.2d 305 (App.1984). The amendment, therefore, must have been intended to provide standing to commence a paternity action to a putative father, who may or may not be the husband of the mother at the time the child is born.

## BEST INTERESTS OF THE CHILD

■ Arizona has a strong public policy of preserving the family unit when neither the mother nor the mother's husband disavows the latter's paternity of the child. Because of that policy, we conclude that the trial court must specifically consider whether it would be in the best interests of the child for the case to proceed before a putative father may be permitted to seek blood tests in an attempt to rebut the presumption of the husband's paternity.

In *McDaniels v. Carlson*, 108 Wash.2d 299, 738 P.2d 254 (1987), the Washington Supreme Court held that before a person

outside the family unit can proceed with a paternity action under the Uniform Parentage Act (UPA), the trial court should consider the action's impact upon the child and the child's best interests. The court noted that the UPA contemplates that the child's interests be considered, requiring that the child be joined as a party, without which the court will be deprived of jurisdiction, and that a guardian ad litem be appointed. The court also observed that, depending upon the circumstances, a child's interests may be better served by maintaining a stable existing family relationship rather than allowing a paternity action to proceed, ruling that "the court must balance the interests of all parties involved, while keeping in mind that the child's interests are paramount." *Id.* at 312, 738 P.2d at 262. Although Arizona has not adopted the UPA, we find the court's public policy reasoning persuasive.

In *C.C. v. A.B.*, 406 Mass. 679, 550 N.E.2d 365 (1990), the Massachusetts Supreme Judicial Court adopted a similar policy. The court, in considering whether a man who alleges that he is the father of a child can bring a paternity action when the mother is married to another man and was at the time of the child's conception and birth, examined the reasons for the strong presumption in favor of the husband's paternity. The court noted that the presumption was designed to avoid the stigma of illegitimacy and concluded that the presumption is no longer necessary because of the changes in legal discrimination against illegitimate children. The court instead required that paternity be established by clear and convincing evidence. Before such evidence may be presented, however, it ruled that the court must consider whether "a substantial parent-child relationship" exists, *id.* at 689, 550 N.E.2d at 372, noting that "[i]t is the developed parent-child relationship of which both the plaintiff and the child were suddenly deprived, that the plaintiff seeks to renew." *Id.* It concluded that trial courts should look at such things as

emotional bonds, economic support, custody of the child, the extent of personal association, the commitment of the putative father to attending to the child's

needs, the consistency of the putative father's expressed interest, the child's name, the names listed on the birth certificate, and any other factors which bear on the nature of the alleged parent-child relationship.

*Id.*[2]

■ Requiring the trial court to make a specific finding regarding the child's best interests before allowing a putative father to proceed with a paternity action does not violate his constitutional rights. In a plurality opinion, the United States Supreme Court concluded that the putative father in an "adulterous" relationship does not have a constitutionally protected liberty interest in a relationship with his child. *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). The Court upheld a California statute that allows only a husband or wife to rebut the presumption that a child born to a married woman living with her husband is the child of the marriage. Justice Scalia, writing for the majority, stated:

> Thus, the legal issue in the present case reduces to whether the relationship between persons in the situation of Michael [the putative father] and Victoria [the child] has been treated as a protected family unit under the historic practices of our society, or whether on any other basis it has been accorded special protection. We think it impossible to find that it has. In fact, quite to the contrary, our traditions have protected the marital family (Gerald, Carole, and the child they acknowledge to be theirs) against the sort of claim Michael asserts.

*Id.* at 124, 109 S.Ct. at 2342, 105 L.Ed.2d at 106.

In reaching the conclusion we have, we have weighed the various equities involved, keeping in mind the perhaps irreversible disruption a finding of paternity may cause in a situation such as this, where the only father the child has ever known has been the mother's husband. As the Kansas Supreme Court noted in *In re Marriage of*

*Ross*, 245 Kan. 591, 601, 783 P.2d 331, 338–339 (1990):

> The present case is a vivid example of what can occur when a court, in the pursuit of judicial economy, bastardizes a child and then determines that because of bonding it is in the child's best interests to continue his or her relationship with the presumed father. The court has not only bastardized the child and relieved the presumed father of all necessity of support, but it has placed the obligation to support the child on the biological father, who has never had a bonding relationship with the child. Such is not the purpose of the Act [the UPA] or our public policy. Once the judge, in the interest of judicial economy, ruptures the father/child relationship, the judge cannot return the parties to the position they were in prior to the blood test, no matter how wise or great his or her judicial power. That is a fact of life.

> \*   \*   \*   \*   \*   \*

> ... Prior to ordering a blood test to determine whether the presumed parent is the biological parent, the district court must consider the best interests of the child, including physical, mental, and emotional needs. The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child. Although someone may suffer, it should never be the child, who is totally innocent and who has no control over or conception of the environment into which he or she has been placed.

We conclude that the trial court abused its discretion in failing to inquire whether it would be in the child's best interests to allow the paternity action to proceed. Therefore, it erred in ordering blood tests. The court's order in this regard is vacated, and we remand this matter to the trial court for an evidentiary hearing on the issue of the child's best interests. In order for those interests to be adequately

2. The court noted, however, that it was not deciding what rights the putative father might have when the failure to develop a substantial relationship with the child might be due to the mother's actions. We recognize the difficulty

this issue may pose at a hearing; nevertheless, there are numerous other factors at which the trial court may look in determining whether it would be in the child's best interests to allow the action to proceed.

presented, the court should appoint an attorney to represent the child. *See* A.R.S. § 8–535(D). In the event that the court finds those interests to support proceeding with the action, the court may, in its discretion, order the mother, the putative father, and the child to submit to blood tests. We do not address the propriety of an order requiring the husband to submit to a blood test because that issue is not before us.

ROLL, P.J., and HOWARD, J., concur.