212 P.3d 835 (2009)
Charles L. JONES, Grace Jones, Robert W. Nichols, Mary Ann Nichols, and Robert E. Hebert, Plaintiffs/Counterdefendants/Appellees,
v.
W. David WESTON, assignee of Edson Whipple and Louise Whipple, Defendant/Counterclaimant/Judgment Creditor/Appellant.
No. 2 CA-CV 2008-0145.
Court of Appeals of Arizona, Division 2, Department B.
April 22, 2009.
*837 Gibson, Nakamura & Green, P.L.L.C. by Scott D. Gibson, Tucson, Attorneys for Plaintiffs/Counterdefendants/Appellees.
W. David Weston, Salt Lake City, Utah, In Propria Persona.

OPINION
VÁSQUEZ, Judge.
¶ 1 In this action involving a partnership dispute, appellant David Weston appeals from the trial court's order quashing writs of garnishment entered to enforce a judgment against appellees Robert and Mary Ann Nichols (Nichols). Weston argues the court erred in finding the underlying judgment had expired. Specifically, he contends the judgment was renewed by garnishment proceedings and the time period for renewing the judgment was tolled during Nichols's bankruptcy proceedings and during the interval between the trial court's order vacating the judgment and its reinstatement on appeal. Because we agree a judgment cannot be renewed during the period it has been vacated, such period should not be included in the calculation of the time for renewing a judgment pursuant to A.R.S. §§ 12-1551 and 12-1612; accordingly, we reverse.

Facts and Procedural Background
¶ 2 Robert Nichols, Charles Jones, and Robert Hebert (the partners) and Edson Whipple formed a partnership, whose sole asset was a mining lease. In 1996, the partners initiated this action against Whipple, alleging Whipple had assigned his interest in the partnership to them and seeking declaratory relief. Whipple counterclaimed, alleging fraud and breach of fiduciary duties.[1] A jury found in favor of Whipple, determining "[Whipple's] interest in the partnership to be 50%," and that the partners had committed fraud. Based upon the jury's verdict and findings, the trial court concluded that the partners had "acted in concert to breach their fiduciary duties to and defraud ... Whipple" and entered a "joint and several judgment in the amount of $848,947.10" against them on July 18, 2001. The partners moved to amend the judgment pursuant to Rule 59(a)(8), Ariz. R. Civ. P., arguing the fraud claim was barred by the statute of limitations. The court granted the partners' motion, and on January 16, 2002, entered an *838 amended judgment (the first amended judgment), which dismissed the fraud count but maintained joint and several liability against the partners.
¶ 3 In May 2002, Nichols filed a bankruptcy petition pursuant to Chapter 7 of the bankruptcy code. See 11 U.S.C. §§ 701-784. However, Whipple successfully moved to have the debt declared non-dischargeable, and in April 2004 filed applications for writs of garnishment in the trial court to collect the judgment against Nichols. In July 2004, the trial court issued a "Judgment on Garnishment," placing "a continuing lien upon the earnings of the Judgment Debtors, Robert W. Nichols and Mary[A]nn Nichols, until the lien in favor of Judgment Creditor has been satisfied in full, or further order of this Court." The same month, Nichols filed a motion in the trial court pursuant to Rule 60(c)(1) and (6), Ariz. R. Civ. P., seeking relief from the first amended judgment. He contended that, given the dismissal of the fraud count, it was a "mistake" that "the joint and several liability provision remained in the judgment." On August 26, 2004, the court granted Nichols's motion, vacated the first amended judgment, and entered a second amended judgment in favor of Whipple and against the partners severally in proportion to the amounts each had received from the partnership distributions.
¶ 4 Whipple filed a notice of appeal from the second amended judgment in September 2004. Later the same month, Nichols filed a motion in federal bankruptcy court to convert his Chapter 7 bankruptcy proceeding into one pursuant to Chapter 13 of the bankruptcy code. See 11 U.S.C. §§ 1301-1330. We stayed the appeal in this court pending the outcome of the bankruptcy proceedings. The Bankruptcy Appellate Panel of the Ninth Circuit ultimately concluded that the reduced amount of the second amended judgment against Nichols exceeded the debt limits for a Chapter 13 bankruptcy and dismissed his bankruptcy case. Thereafter, the state court appeal was resumed and in a memorandum decision, this court found the trial court had erred in granting relief under Rule 60(c) because the partners had acted in concert to breach their fiduciary duties. Jones v. Whipple, No. 2 CA-CV 2004-0187, ¶ 23 (memorandum decision filed June 27, 2007). Thus, we concluded the record supported the imposition of joint and several liability, notwithstanding the dismissal of the fraud claim and we vacated the second amended judgment and "reinstate[d]" the first amended judgment. Id. ¶ 24.
¶ 5 In May 2008, Whipple again filed applications for writs of garnishment to collect the first amended judgment from earnings owed to Nichols. After a hearing, the trial court found "the original judgment's monetary award was not affected ... by the[] amended judgments" and "the appropriate judgment date to consider ... is the original July 18, 2001 judgment." The court concluded the judgment had "lapsed and was not timely renewed," and thus quashed "any Writ of Garnishment that may have been signed regarding this judgment." This appeal followed. This court granted David Weston's motion to substitute himself as Whipple's assignee pursuant to Rule 17(a), Ariz. R. Civ. P.[2] We have jurisdiction under A.R.S. § 12-2101(F)(3), which permits an appeal from an order "[d]issolving or refusing to dissolve an attachment or garnishment." See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Greene, 195 Ariz. 105, ¶ 6, 985 P.2d 590, 592 (App.1999).

Discussion

Standard of review
¶ 6 Because the issue on appeal is one of statutory interpretation, our standard of review is de novo. City of Tucson v. Clear Channel Outdoor, Inc., 209 Ariz. 544, ¶ 8, 105 P.3d 1163, 1166 (2005). In construing a statute, *839 our primary goal is to give effect to the intent of the legislature, and the statute's language is the most reliable indicator of legislative intent. McMurray v. Dream Catcher USA, Inc., 220 Ariz. 71, ¶ 8, 202 P.3d 536, 540 (App.2009); see also Cornman Tweedy 560, LLC v. City of Casa Grande, 213 Ariz. 1, ¶ 8, 137 P.3d 309, 311 (App.2006); Walker v. City of Scottsdale, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989). But when that language is ambiguous, we may also consider "the context and subject matter, the effects and consequences of the statute, and other acts that are in pari materia." Ban v. Quigley, 168 Ariz. 196, 198, 812 P.2d 1014, 1016 (App.1990).
¶ 7 In order to determine whether the trial court erred in finding the judgment underlying the garnishment had expired, we must interpret three statutes. Section 12-1551(B), A.R.S., provides, in relevant part, as follows:
An execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to section 12-1612 or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.
And A.R.S. §§ 12-1611 and 12-1612 respectively provide that a judgment may be renewed "by action thereon at any time within five years after the date of the judgment" or by filing an affidavit for renewal "within ninety days preceding the expiration of five years from the date of entry of such judgment."

Did bankruptcy proceedings extend the deadline for filing a renewal affidavit?
¶ 8 Relying on In re Smith, 209 Ariz. 343, 101 P.3d 637 (2004), Weston first argues the time period for renewing a judgment pursuant to §§ 12-1551 and 12-1612 is tolled during bankruptcy. He thus contends in this case "the time to file the renewal affidavit has been extended for an additional 1333 days." However, his reliance on Smith is misplaced. In Smith, our supreme court answered two certified questions from the United States Bankruptcy Court regarding timeliness of renewal affidavits: (1) "whether under Arizona law the time for filing a renewal affidavit is extended if the debtor has a bankruptcy proceeding pending," and (2) whether affidavits filed after the original renewal date were timely because "the time for filing the renewal affidavit was ... extended" by the bankruptcy, pursuant to federal law. Id. ¶¶ 9, 17; see 11 U.S.C. § 108(c)(1). In answering the first question, the court distinguished between the filing of an affidavit and the enforcement of a judgment. Smith, 209 Ariz. 343, ¶ 9, 101 P.3d at 639. Reasoning that the filing of a renewal affidavit is a "ministerial action," which, unlike enforcement of a judgment, is not precluded during bankruptcy, the court concluded that "[u]nder Arizona law, the time to file an affidavit of renewal of judgment is not changed or extended by the pendency of a bankruptcy case." Id. ¶¶ 13-15.
¶ 9 Weston's argument apparently relies on the court's positive answer to the second question. However, that answer was based on the "premise that the B[ankruptcy]A[ppellate]P[anel] has ruled as a matter of federal law that [11 U.S.C.] § 108(c)(1) extended the time for filing the renewal affidavit in this case." Id. ¶ 16. The Bankruptcy Appellate Panel described this as a "flawed assumption" and found that, "[a]bsent state law suspending the time for filing the renewal affidavit, ... [n]o additional time [i]s afforded under § 108(c)(1)." In re Smith, 352 B.R. 702, 706-07 (B.A.P. 9th Cir.2006). There is thus no basis under either federal or Arizona law "for a suspension of the time for filing a[n affidavit renewing a] judgment during the pendency of a bankruptcy case." See id. at 707.

Did garnishment proceedings renew the judgment?
¶ 10 Weston next argues that Whipple's initiation of garnishment proceedings in April 2004 constituted "an action brought on" the judgment pursuant to § 12-1551 and thus renewed the judgment for an additional five-year period.[3] Because the statute itself contains *840 no definition of what constitutes "an action brought on" a judgment, we again must employ principles of statutory construction in order to determine the legislature's intent with respect to this provision and its meaning. See Ban, 168 Ariz. at 198, 812 P.2d at 1016 (requiring consideration of words, context, and subject to interpret unclear terms of statute).
¶ 11 In the absence of a definition of a term in a statute, it is "reasonable to assume [the legislature] intended to give the [term] its ordinary legal meaning." Resolution Trust Corp. v. Western Techs., Inc., 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994). And the term "action on a judgment" refers to a specific common law cause of action, the main purpose of which is "`to obtain a new judgment which will facilitate the ultimate goal of securing the satisfaction of the original cause of action.'" Associated Aviation Underwriters, 209 Ariz. 137, ¶ 150, 98 P.3d 572 (App.2004), quoting Burshan v. Nat'l Union Fire Ins. Co., 805 So.2d 835, 841 (Fla.Dist.Ct.App.2001). Generally, such an action can only be brought against the defendant of record in the underlying judgment. Id.
¶ 12 By contrast, a garnishment proceeding pursuant to A.R.S. §§ 12-1598.01 through 12-1598.17 permits a judgment creditor who is "a party in an action to whom a money judgment has been awarded," § 12-1598.03, to obtain a "lien on the nonexempt earnings of the judgment debtor," § 12-1598.05, until "[t]he underlying judgment is satisfied in full, is vacated or expires," § 12-1598.10(D)(1). Such an enforcement proceeding is thus merely ancillary to the action that gave rise to the underlying judgment. "`If the original judgment is reversed, the judgment in garnishment is deprived of a basis and falls with it. The existence of a valid judgment is a jurisdictional prerequisite to garnishment relief.'" Hosogai v. Liberty Mut. Ins. Co., 125 Ariz. 598, 600, 611 P.2d 951, 953 (App.1980), quoting Zurich Ins. Co. v. Bonebrake, 137 Colo. 37, 320 P.2d 975, 976 (1958). A garnishment proceeding is thus not itself an "action brought on" the judgment pursuant to § 12-1551.[4]See also Hall v. World Sav. & Loan Ass'n, 189 Ariz. 495, 498, 503, 943 P.2d 855, 858, 863 (App.1997) (creditor's filing new lawsuit, rather than merely "foreclos[ing] the lien of his recorded judgment," constituted filing of action properly renewing judgment pursuant to § 12-1611).
¶ 13 Furthermore, we note that interpreting the phrase "an action brought on the judgment" to include garnishment proceedings would be contrary to the statutory purpose of giving notice of the status of the judgment to interested third parties as well as to the judgment debtor. See J.C. Penney v. Lane, 197 Ariz. 113, ¶ 29, 3 P.3d 1033, 1039 (App.1999). Although, as Weston points out, "[t]he civil docket recording these collection activities is a matter of public record," he does not argue such activities would be included in the index of judgments maintained by the clerk of the court. They would thus be considerably less accessible than either the entry of a new judgment after the filing of an independent action or the filing of a renewal affidavit. Thus, in the absence of any evidence of legislative intent to the contrary, we conclude a garnishment proceeding does not renew a judgment pursuant to *841 § 12-1551.[5]

How did the judgment's amendment, vacation, and reinstatement affect the deadline for filing a renewal affidavit?
¶ 14 Finally, Weston argues that pursuant to A.R.S. §§ 12-1551 and 12-1612, the time for renewing a judgment commences with "the date of the entry of the amended judgment." Although Nichols argues that the "amendment of a judgment does not extend the time to renew," he cites no authority to support this assertion. And here, regardless of the fact the January 16, 2002 judgment amended an existing judgment, it was itself a "judgment" that was duly "entered." Furthermore, we note that in interpreting a statute that similarly provides the time for renewing a judgment commences "the date of entry of a ... judgment," California courts have concluded, "When an amended judgment is entered[,] the ... period within which the judgment must be enforced or renewed commences upon the date of entry of the amended or modified judgment." In re Marriage of Wilcox, 124 Cal.App.4th 492, 21 Cal.Rptr.3d 315, 321 (2004); see Cal.Civ.Proc.Code § 683.020 (1983). And we assume that if our legislature had intended § 12-1551 to not apply to the entry of judgments that amend existing judgments, it would have so indicated, as have other jurisdictions. See, e.g., Haw.Rev. Stat. § 657-5 (time for renewal runs from entry of "original judgment").
¶ 15 Thus, because the first amended judgment was entered on January 16, 2002, a renewal affidavit had to be filed "within ninety days preceding" January 16, 2007.[6]See § 12-1612. By this time, however, the trial court's second amended judgment had expressly vacated the first amended judgment, and thus "nothing remained of the [first amended] judgment" for Whipple to renew. See Nielson v. Patterson, 204 Ariz. 530, ¶ 12, 65 P.3d 911, 914 (2003) ("vacated judgment lacks force or effect and places parties in the position they occupied before entry of the judgment").[7]
¶ 16 We must therefore consider the effect of the vacation and subsequent reinstatement of a judgment on the deadline for filing a renewal affidavit pursuant to § 12-1612. Our supreme court noted in Smith, 209 Ariz. 343, ¶ 13, 101 P.3d at 639, that a creditor's ability to file a renewal affidavit is not affected "by an automatic bankruptcy stay or any stay of the enforcement of the judgment." Thus, it held the time to file such an affidavit "is not changed or extended" by any stay on enforcement. Id. ¶ 15, 101 P.3d 637. Here, however, because the judgment had been vacated on August 26, 2004, Whipple was not only unable to enforce the judgment, but was also unable to renew it until August 17, 2007, when we reinstated it on appeal. Thus, the time for Whipple to file a renewal affidavit was "tolled and extended ... to accommodate the time [he] was precluded ... from attempting" to do so. Cf. Smith, 209 Ariz. 343, ¶ 14, 101 P.3d at 640. Pursuant to § 12-1612, *842 Whipple is required to renew the judgment "within ninety days preceding" January 6, 2010.[8] The trial court therefore erred both in finding the judgment had "lapsed and was not timely renewed" and in quashing the writs of garnishment.

Disposition
¶ 17 For the reasons stated above, we reverse and remand the case to the trial court for proceedings consistent with this decision.
CONCURRING: PETER J. ECKERSTROM, Presiding Judge and J. WILLIAM BRAMMER, JR., Judge.
NOTES
[1] Whipple's counterclaim also added the partners' spouses as parties, and the subsequent judgments were entered against both the partners and their spouses. And following Edson Whipple's death before the 2001 trial, his widow Louise Whipple was substituted as personal representative of his estate.
[2] In a footnote in his answering brief, filed January 27, 2009, Nichols challenges this substitution for the first time, despite failing to object to either Weston's October 14, 2008 motion or the court's October 31, 2008 order permitting the substitution. However, he does not question the validity of the "assignment of judgments, causes of action and collection rights," signed by Louise Whipple, on which the substitution was based. Nor does he cite any authority in support of his argument. We therefore do not consider it. See Brown v. U.S. Fid. & Guar. Co., 194 Ariz. 85, ¶ 50, 977 P.2d 807, 815 (App.1998).
[3] Weston briefly argues in the alternative that Whipple's filing of a complaint in Nichols's Chapter 7 bankruptcy proceedings to have the first amended judgment declared non-dischargeable constituted an "action on the judgment" as contemplated by § 12-1611. He relies exclusively on our finding in Associated Aviation Underwriters v. Wood, 209 Ariz. 137, ¶¶ 150-53, 98 P.3d 572, 615-16 (App.2004), that a complaint filed by a judgment creditor in a declaratory relief action to determine an insurer's liability to the insured judgment debtor constituted an "action on the judgment" for purposes of this section. However, "[w]hen it reaches the bankruptcy court the issue is one of dischargeability and not one of liability." 1A Collier on Bankruptcy, § 17.16, at 1650.2 (14th ed. 1978). Weston's reliance on Associated Aviation Underwriters is therefore misplaced and, in the absence of any other authority or argument and, in light of the fact we rule in his favor on other grounds, we decline to reach the merits of this alternative argument.
[4] And a garnishment proceeding, initiated under § 12-1598.03 by a judgment creditor making a written application for a writ of garnishment, arguably does not constitute a civil action "commenced by filing a complaint with the court" pursuant to Rule 3, Ariz. R. Civ. P.
[5] We note that the United States District Court for the District of Arizona came to the opposite conclusion in Fidelity National Financial, Inc. v. Friedman, No. CIV 03-1222-PHXRCB (DKD), 2008 WL 3049988, at *10 (D.Ariz. Aug.1, 2008), finding that "collection activities" renewed a judgment pursuant to § 12-1611. However, that decision placed great emphasis on the fact that § 12-1611 refers to "action" rather than "an action," while apparently ignoring the relevant language in § 12-1551(A) that a judgment be renewed "either by affidavit or by an action brought on it." Furthermore, it opined that "the notice policy underlying section 12-1611 was met here in that the [judgment debtors] were `well informed about the status of the collection efforts,'" disregarding the notice policy with respect to interested third parties. Id. at 8; see J.C. Penney, 197 Ariz. 113, ¶ 29, 3 P.3d at 1039. In any event, we are not bound by the federal district court's interpretation of Arizona statutes. Lewis v. Midway Lumber, Inc., 114 Ariz. 426, 430, 561 P.2d 750, 754 (App.1977).
[6] The following analysis would apply equally to the institution of an "action on" the judgment to renew it pursuant to § 12-1551.
[7] And, because five years had not yet elapsed since the entry of the second amended judgment, there was no reason to renew it. In any event, any attempt to do so by affidavit would have been untimely. See § 12-1612(B) (renewal affidavit must be filed within ninety-day period before date judgment due to expire). "Moreover, when a rule of procedure does not speak to a set of facts or speaks ambiguously, courts should give the rule a liberal construction rather than create a pitfall for the unwary." Nielson, 204 Ariz. 530, ¶ 13, 65 P.3d at 914.
[8] We arrive at this date by adding the 1,086 days between August 26, 2004, and August 17, 2007, during which the judgment was vacated, to the five-year period that commenced when the judgment was entered on January 16, 2002.