960 P.2d 624

In re the MARRIAGE OF Pammela
L. WORCESTER, aka Reidy,
Petitioner/Appellee,

and

Donald L. Worcester,
Respondent/Appellant.

No. CV–97–0340–PR.

Supreme Court of Arizona,
En Banc.

May 28, 1998.

Ulrich, Kessler & Anger, P.C. by Paul G.
Ulrich and Donn G. Kessler and Cohen &
Fromm, P.C. by Sandra J. Fromm, Phoenix,
for Pammela L. Worcester, aka Reidy.

Cawood & McKindles, P.C. by John M.
McKindles, Phoenix, for Donald L. Worcester.

**Statement of the Case**

BRAMMER, Judge.

¶ 1  Pammela and Donald Worcester's six-year marriage was dissolved on June 3, 1994, pursuant to a stipulated decree incorporating a shared custody agreement relating to K., who was born in August of 1991. Two and one-half months after the decree was entered, Pammela filed a motion to set it aside pursuant to Ariz. R. Civ. P. Rule 60(c), 16 A.R.S., to "delete reference to their [sic] being any child born of the marriage," and eliminate any "need for custody, visitation or support orders." The trial court granted the motion after a hearing, effectively eliminating Donald as K.'s father. Donald appealed and, upon review, the court of appeals reversed, holding that a trial court must first determine whether the best interests of the child are served by adjudicating biological paternity before permitting a mother to challenge a former husband's presumptive paternity. This petition for review followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) and have granted review on three issues:

  a) Does the court have authority to determine paternity in this matter, given the following: the alleged biological father is not a party to the proceedings, is not before the court and will not be bound by its judgment, while the presumptive, legal father has established a relationship, seeks to continue a parental relationship and has supported the child?

  b) Assuming the court has such authority, should it abstain for jurisprudential reasons, there being no object to the determination of paternity when the alleged biological father will not in any way be bound by such determination?

  c) May the court make a determination of paternity pursuant to a Rule 60(c) motion to amend a divorce decree, or must a paternity suit be brought pursuant to Arizona's paternity determination statutes, A.R.S. §§ 25–801 through 25–817?

Because we find that the trial court erred in addressing Pammela's claims in the context of a motion pursuant to Rule 60(c), we do not address the first two issues.

**FACTS**

¶ 2  Pammela and Donald signed K.'s birth certificate as his parents. Because K. was born during the parties' marriage, Donald was presumed to be K.'s father. A.R.S. § 36–322(E). Pammela testified at the dissolution hearing that, as the decree and joint custody parenting plan provided, Donald was indeed K.'s father. The parties' joint custody agreement designates Donald as K.'s primary residential parent, although physical custody is essentially divided between the parties. The decree also provides that the parties will "make major medical decisions [regarding K.] together," but that "in the event of a dispute, the final decision-making regarding major medical issues shall be with [Donald] after consultation with [Pammela]." Over two months after the decree was entered, Pammela filed her Rule 60(c) motion, asserting that "[Donald] is not the biological father of [K.]," that he was "aware that he is not the biological father of [K.]," and asking the court to remove any reference to Donald as K.'s father, including his parentage and his custody rights. Donald opposed the motion and the trial court set the matter for hearing, appointing an attorney to represent K.

¶ 3  Although neither Pammela nor any third party sought to establish any other man's paternity, Pammela requested the trial court to order the parties and K. to submit to blood testing "so as to determine whether ... Donald ... is in fact the biological father of [K.]." Donald objected, arguing the court must first determine whether it was in K.'s best interests to order such tests. K.'s counsel also opposed Pammela's motion to set aside the decree, urging the court to limit any evidentiary hearing to K.'s best interests and deny the request for any blood testing that would exclude Donald as K.'s biological father. Before the court ruled on Pammela's request for an order compelling the blood testing, Pammela had blood tests conducted on herself, K. and Chris, the man Pammela claims is K.'s biological father. No request was made of nor notice provided to Donald prior to K. being tested, nor was his blood tested. Pammela offered the blood test re-

sults as evidence at the hearing, attaching the results to the memorandum she filed before the hearing.[1] The trial court sustained Donald's objection to the results, based on the claim that they were not relevant to a determination of K.'s best interests. Notwithstanding this ruling, Pammela testified that the blood test results "were 99.9 percent effective, or accurate," and "[t]hat Chris is the father."

¶4 Donald did not object to Pammela's testimony. He did not dispute Pammela's testimony or the accuracy of the test results and conceded in the face of the evidence that he was probably not K.'s biological father. After the hearing the trial court granted Pammela's motion, setting aside "that portion of the Decree finding that [K.] was the issue of [the] parties," and confirming "all other portions of the decree, including the parenting agreement," while making no findings regarding K.'s best interests.[2] The court of appeals reversed, remanding the case to the trial court for a determination of whether an adjudication of biological paternity is in K.'s best interests.

## DISCUSSION

¶5 The resolution of these rather complicated issues lies in the answer to the last question raised on review. We conclude that the issue of biological paternity and the challenge to Donald's presumptive paternity was improperly presented to the trial court in a motion seeking relief from the decree pursuant to Rule 60(c). Rule 60(c) provides in relevant part that a party may apply for relief from a final judgment based upon several grounds, including: "(1) mistake, inadvertence, surprise or excusable neglect; . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an *adverse party;* . . . or (6) any other reason justifying relief from the operation of the judgment." (Emphasis add-

ed.) Although Pammela did not specify in her "motion to set aside" the decree which subsection of the rule she claimed provided her entitlement to relief, in subsequent pleadings she relied on subsections (1) and (6). In opposing the motion, Donald argued that, because Pammela intentionally misrepresented the facts under oath to the court regarding K.'s parentage, confirming under oath as true the facts upon which the decree and the shared custody agreement were based, she was not entitled to relief under either subsection of Rule 60(c). We agree.

¶6 The purpose of Rule 60(c) is to provide relief where mistakes and errors occur despite a party's diligent efforts to comply with rules. *City of Phoenix v. Geyler,* 144 Ariz. 323, 697 P.2d 1073 (1985). By its very terms, the rule only provides the potential for relief where a party's conduct is excusable. *Id.* If mere neglect, inadvertence, or forgetfulness without a reasonable excuse is not enough, *Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984), it is axiomatic that one who has knowingly and intentionally perpetrated a fraud on another party and the court can never be entitled to relief under the rule. Principles of equity guide us in applying the rule. *See Bateman v. McDonald,* 94 Ariz. 327, 385 P.2d 208 (1963). "The old equity maxim that one must come into equity with clean hands is still meaningful." *Trollope v. Koerner,* 21 Ariz.App. 43, 46, 515 P.2d 340, 343 (1973). Pammela misrepresented the facts that resulted in the entry of the decree. She is simply not in a position to claim extraordinary circumstances of hardship or injustice, having brought the circumstances upon herself.

¶7 We find an additional reason to dismiss this action. The legislature has enacted comprehensive statutes to deal with the issues surrounding determinations of parentage. The vital statistics statutes cre-

---

1. There is nothing in the record demonstrating compliance with the blood testing procedures statutorily mandated for establishing paternity and maternity. A.R.S. § 25–807.

2. While the court properly recognized that "the issue of paternity [was] not properly before the court" and could not be established in this ac-

tion, but rather "a separate action should be brought pursuant to A.R.S. § 12–841 et seq. to establish Paternity," it nevertheless proceeded to disestablish Donald's paternity, while at the same time preserving all his responsibilities of care, support, and decision making respecting K. embodied in the parenting agreement.

ate a presumption that when "the mother of a child is married at the time of birth ... or was married at any time in the ten months immediately preceding the birth," her husband is the child's father. A.R.S. § 36–322(E). Similarly, the statutes relating to paternity and maternity proceedings presume a man to be the father if "[h]e and the mother of the child were married at any time in the ten months immediately preceding the birth." § 25–814(A)(1).[3] Under both statutes, Donald is the presumed father of K. Although this presumption can be rebutted by "clear and convincing evidence," § 25–814(C), nothing in the law permits it to be rebutted in the fashion attempted by Pammela. Further, we find no suggestion in the statutes that the court must or may permit the presumption to be rebutted unless the mother is seeking child support from another.

¶ 8  Pursuant to § 25–415, someone other than a child's legal parent may petition for custody ·of a child. Because neither K.'s alleged biological father nor anyone other than Pammela and Donald, K.'s legal parents, has demonstrated any interest in K. or having custody of him, this statute is inapplicable here. The "establishing identity" statutes allow a child's parent, next friend, or guardian ad litem to seek a superior court determination when the child "desires to establish his identity or fix his birthright and parentage, or both." § 12–621. The court may enter an appropriate order after a hearing. *Id.* However, such a determination does not operate to divest any party, including the reputed father, if different than as established by the court, of obligations previously incurred or assumed. § 12–622(B). Here, the request to eliminate Donald as K.'s father was not sought by or on behalf of K., but rather by Pammela for reasons of her own, and no request has been made by anyone to "establish [K.'s] birthright and parentage." Indeed the attorney appointed to represent K.'s interests opposed Pammela's motion.

¶ 9  Section 8–533 provides the method for, and the reasons justifying, terminating a parent-child relationship, none of which was alleged here.[4] The statute does not enumerate proof of nonpaternity, by itself, as a ground justifying terminating a father-child relationship. Indeed, all the statutory reasons are aimed at expediting the adoption of children who linger in foster care when their parents are absent or otherwise unable to properly care for them. 1986 Ariz. Sess. Laws, ch. 205, § 1. Where the legislature has spoken by statute, we will not construe our court rules, nor permit them to be utilized, so as to interfere with the proper application of those statutes. *See Daou,* 139 Ariz. at 357, 678 P.2d at 938 (substantive rights created by statutes cannot be enlarged or diminished by court rules); *see also Rosner v. Denim & Diamonds, Inc.,* 188 Ariz. 431, 937 P.2d 353 (App.1996).

¶ 10  The issue of K.'s biological paternity was never properly before the trial court. No party had sought to establish Chris as K.'s biological father. That is an action, as the trial court recognized, to be brought and maintained separate from this one. Indeed, neither K.'s putative father nor anyone else, including Pammela, has made any effort, through a paternity action or otherwise, to establish anyone other than Donald as K.'s father. Thus, in addition· to the fact that Pammela has no viable claim for relief under Rule 60(c), the issues themselves could in no event be raised in a motion pursuant to that rule.

¶ 11  The opinion of the court of appeals is vacated, the order of the superior court is

---

3.  Formerly § 12–854. The section was added to the statutes and became effective July 17, 1994, *1994 Ariz. Sess. Laws, ch. 374, § 5, six weeks* after entry of the dissolution decree but before Pammela filed the motion to set it aside. It was renumbered as § 25–814 by 1996 Ariz. Sess. Laws, ch. 192, § 14.

4.  Section 8–533(B)(5) currently provides *that if a* "potential father fail[s] to file a paternity action within thirty days of completion of service of notice" that the child is to be adopted, his parental rights may be terminated. Amended by 1995 Ariz. Sess. Laws, ch. 221, § 5. The revised statute became effective July 13, 1995, nearly a year after Pammela filed her motion to set aside the dissolution decree. Regardless, ·it appears to have no application here.

reversed, and this matter is remanded with directions to dismiss Pammela's motion.

ZLAKET, C.J., and JONES, V.C.J., FELDMAN and MARTONE, JJ., concur.

Ruth V. McGregor did not participate in the determination of this matter; pursuant to Ariz. Const. art. VI, § 3, the Honorable J. William Brammer, Jr., Judge of the Arizona Court of Appeals, Div. Two, was designated to sit in her stead.