967 P.2d 616

**Myron and Cheryl STEPHENSON, husband and wife, Petitioners,**

**v.**

**The Honorable Daniel E. NASTRO, Judge of the Superior Court, in the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,**

**Teresa THOMAS, Real Party in Interest.**

No. 1 CA–SA 98–0238.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 27, 1998.

---

O'Connor, Cavanagh, Anderson, Killingsworth & Beshears by Christina S. Hamilton, Phoenix, for Petitioners.

Phillips & Associates by Laura A. Lehan, Phoenix, for Real Party in Interest.

OPINION

VOSS, Judge.

¶ 1 Petitioner Myron Stephenson, the presumed father of the child involved in the underlying custody dispute, brings this special action from the trial court's order requiring him to submit to paternity testing.[1] Petitioner contends that the trial court abused its discretion in requiring such testing without a prior determination that paternity testing is in the best interests of the child, or, in the alternative, without conducting an evidentiary hearing to determine the merits of the biological mother's collateral attack on the validity of her previously executed affidavit of acknowledgement of father's paternity. Although we disagree with father's first contention, we agree with his second argument, and for the following reasons, we accept special action jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The minor child was born to mother, an unmarried woman, on April 4, 1992. On April 5, 1992, father named himself as "parent" and signed the child's birth certificate, which was registered with the state on April 23, 1992. The child has resided with father and his wife for more than six years, since she was approximately one month old. Mother was incarcerated for most of the child's life.

¶ 3 In January 1996, father and his wife and mother entered into a "Stipulation re: Child Custody," in which mother indicated that she was "unable to care for the child at this time," and the parties agreed that the court should award custody of the child to father and his wife, with "reasonable access to the child" to mother. Regarding paternity, the stipulation stated:

> That [mother] does not know with certainty the identity of the biological father of the minor child, and that paternity of the child has not been established by a court of law.

On April 29, 1996, an order was entered in Maricopa County Superior Court, awarding "permanent custody" of the child to father and his wife, awarding reasonable visitation to mother, and otherwise adopting the facts set forth in the stipulation.

¶ 4 On May 15, 1996, an "Affidavit of Acknowledgement of Paternity" was executed, which, on its face, appears to contain notarized signatures of both mother and father, set forth on a form provided by the Arizona Department of Health Services, Office of Vital Records. That affidavit declared father to be the biological father of the child.

¶ 5 On January 21, 1998, mother filed in superior court a "Petition for Order to Show Cause Regarding Child Custody and Visitation," alleging that father and his wife had denied her any visitation with the child since her recent marriage in October 1997, and requesting that the prior custody order "be revoked" with custody returned to mother, or, in the alternative, that mother be granted specific visitation rights. Mother stated that she is currently rehabilitated and a married parent of two other children. As additional grounds in support of change of custody, mother alleged:

> [Father and his wife] have no blood relationship to the child in question. . . .
>
> [Father] filed an affidavit of acknowledgement of Paternity with the State of Arizona, . . . that was supposedly signed by [mother] that is an obvious forgery. This forgery was obviously filed by [father] and signed by persons unknown. [Father] also filed a father's affidavit of acknowledgement and filed it with the State claiming to be the father. His affidavit will be proven false by a DNA test.

¶ 6 Four months later, on May 27, 1998, mother filed an "Expedited Motion for Blood Testing," seeking DNA blood testing of father, the child, and mother, pursuant to Rule 35, Arizona Rules of Civil Procedure, for the following reasons:

> Paternity is at issue. Mother contends that [father] is not the true or adoptive father of [the child.] Custody and visita-

---

1. Petitioner's wife has joined in the petition for special action. However, because she has not been ordered to submit to genetic testing, we do not consider her a party aggrieved by the trial court's order.

tion are at issue, as well. Under the statutory scheme now in effect, a biological parent is presumed to be awarded the primary custody in the child's best interest against a nonparent.

Paternity testing is also necessary and is in the best interest of [the child] because she is half American Indian and her heritage and privilege which comes therewith is at stake.

In establishing [father's] legal paternity, no testing was done to date. [Father and his wife] secured the voluntary acknowledgement of paternity from the Mother. However, the acknowledgement was not truly voluntary. Mother was about to be incarcerated at the time these documents were generated. Further, Mother contends not all the documents are her actual signatures.

¶ 7 At a hearing on mother's motion for blood testing on May 28, 1998, the court ordered father, mother, and the child "to submit to the drawing of blood specimens and the taking of deoxyribonucleic acid [probe] samples, or both, for paternity testing." On June 3, 1998, the court heard father's argument for reconsideration of the paternity issue; the minute entry from that hearing summarizes father's argument:[2]

Counsel for [father] indicates to the court that there is an affidavit of acknowledgement of paternity wherein [father] acknowledges paternity, and that pursuant to A.R.S. 12–582,[3] that should constitute a judgment that he is the parent of the said child. The court declines to accept that as res judicata, and based upon that, the court affirms its previous minute entry of May 28, 1998. The court is in receipt of an affidavit of acknowledgement of the attorney.

Counsel for [father] indicates that the affidavit does contain the mother's signature and he will forward such to the court. . . .

¶ 8 On August 26, 1998, at a telephonic status hearing on the custody petition, the court considered father's motion for an evidentiary hearing, and then made the following rulings, which form the basis for this special action:

A.R.S. § 25–807(C) provides that "The Court on its own motion, or on motion of any party to the proceedings, shall order the mother, her child or children, and the alleged father to submit to the drawing of blood samples or the taking of deoxyribonucleic acid probe samples."] In applying this statute, the court must specifically consider whether it would be in the best interest of the child for the case to proceed. *Ban v. Quigley*, 168 Ariz. 196, 812 P.2d 1014 (App.1990).

In the present situation [mother] seeks to establish paternity under A.R.S. § 25–803(A)(1) which permits the Mother to commence paternity proceedings. [Father] maintains that [mother] signed an Affidavit of Acknowledgement of Paternity, recognizing [father] as the father of the child. The validity of this Affidavit has been challenged by [mother] as a forgery and the court must disregard it at this point.

[Father] requests that if the Court disregards the affidavit and orders Paternity Testing that a hearing to determine what is in the best interest of the child be held first. . . . [Father and his wife] maintain that the child knows no other family but [them] and to disrupt that stable family relationship now by allowing a paternity action is not in the best interests of the child.

\* \* \* \*

The present [facts] do not suggest the formation of a "family unit" that would warrant such protection. [Mother] entered into the Custody Stipulation because she was incarcerated and agreed to give [father and his wife] custody of the child because she felt it was at that point to be in the child's best interest. The Stipulation left open the possibility that [mother] could regain custody of the child when [mother] was better able to care for the

---

2. Although the minute entry indicates that a court reporter was present, no transcript has been filed in this special action.

3. Now renumbered as A.R.S. § 25–812, by Laws 1996, ch. 192, § 14.

child. [Father and his wife] were only granted temporary custody of the child while [mother] was incarcerated and rehabilitating herself, the "family unit" as put forth in *Ban* could not exist because there always existed the possibility [mother] would return and seek to modify the Custody Stipulation. Absent a protectable "family unit," the court can order the parties to submit to paternity tests without first holding a "best interest" hearing.

As to [father's] claim that he is the presumptive father, A.R.S. 25–814(A)(1) presumes a man to be the father if "he and the mother of the child were married at any point in the ten months immediately preceding the birth." As [father and mother] were never married, and the Affidavit of Paternity is suspect, [father] cannot be considered the presumed father. Without this presumption [father] has no special rights that warrant a hearing prior to the ordering of the test that will establish the child's paternity.

¶ 9 On this basis, the trial court denied father's request for an evidentiary hearing and ordered the parties to submit to paternity testing. Father brought this special action from that order.[4]

## SPECIAL ACTION JURISDICTION

■ ¶ 10 An order regarding paternity testing is an interlocutory order appropriate for special action review. *Antonsen v. Superior Court*, 186 Ariz. 1, 4, 918 P.2d 203, 206 (App.1996). Additionally, because father raises issues of first impression and statewide importance, which require speedy resolution because they involve the custody of a young child, we conclude that special action relief is warranted, and, in the exercise of our discretion, we accept special action juris-

4. One week after this special action was filed, on September 9, 1998, the mother's tribe, the Tohono O'odham Nation, filed a motion to intervene in the custody action and included a certificate of approval of the child's enrollment in the tribe. The tribe also filed a motion to invalidate the 1996 custody order as a "foster care placement" done without compliance with the provisions of the Indian Child Welfare act, 25 U.S.C. § 1913(a).

diction. *See Ban v. Quigley*, 168 Ariz. 196, 197, 812 P.2d 1014, 1015 (App.1990).

## MERITS

### 1. *The Best Interests of the Child*

¶ 11 We first address father's contention that the trial court abused its discretion by not holding an evidentiary hearing on the best interests of the child before ordering paternity testing. He relies primarily on this court's decision in *Ban v. Quigley*, in which we recognized Arizona's "strong public policy of preserving the family unit when neither the mother nor the mother's husband disavows the latter's paternity of the child." *Id.* at 199, 812 P.2d at 1017. Under those specific circumstances, we held,

> the trial court must specifically consider whether it would be in the best interests of the child for the case to proceed before a putative father may be permitted to seek blood tests in an attempt to rebut the presumption of the husband's paternity.

*Id.*

¶ 12 In *Ban*, we recognized that an attack on paternity by a presumed stranger outside the "family unit" could have a potentially "irreversible disruption" in a situation where, "because of bonding it is in the child's best interest to continue his or her relationship with the presumed father." *Id.* at 200, 812 P.2d at 1018. Because the trial court had not inquired into the child's best interests before ordering paternity testing of the presumed father in *Ban*, we vacated the order and remanded for an evidentiary hearing.

¶ 13 This situation, however, is distinguishable from *Ban*, not only factually, but on a public policy basis as well. The person challenging paternity in this case is the biological mother of the child, not a presumed stranger to the "family unit." In an analogous situa-

Because the custody determination is not before us in this special action, the tribe is not a party to these proceedings. We note that the tribe's involvement is based solely on its contention that father is a nonparent, which we conclude has not been established. We therefore find it premature to address the tribe's role in the custody proceedings, and we limit our review in this case solely to the order requiring paternity testing.

tion, we pointed out that a party may obtain paternity testing without any showing of "good cause," when one of the statutorily presumptive parents, as opposed to a stranger to the family unit, challenges paternity. *See Antonsen*, 186 Ariz. at 5, 918 P.2d at 207.

¶ 14 In *Antonsen*, we discussed several cases that have required a finding of the best interests of the child before a paternity blood test is ordered, including *Ban v. Quigley*, and we pointed out that they had in common a situation where "the presumptive parents do not challenge paternity but a third party attempts to invade the established family structure." *Id.* at 6–7, 918 P.2d at 208–09. We distinguished those cases on the following basis:

> In Arizona, however, the "best interests of the child" cannot prevent mandatory paternity testing under A.R.S. section 12–847(C) because "the determination of the best interest of the child must be made separately, after the resolution of biological paternity," when the mother contests the presumptive father's paternity, and when the tests confirm the presumptive father is not biologically related to the child. *R.A.J. v. L.B.V.*, 169 Ariz. 92, 94–96, 817 P.2d 37, 39–41 (App.1991). Thus, this line of cases preventing mandatory testing for policy reasons does not apply in this

case where mother asserts that husband is not the biological father.

*Id.* at 7, 918 P.2d at 209.

¶ 15 Father argues that, since *Antonsen* was decided, this court recently held that a best interests determination was necessary even when the paternity of a presumptive father was challenged by the biological mother. *See Worcester v. Worcester*, 245 Ariz. Adv. Rep. 15 (App. June 10, 1997). That case, however, has been vacated by our supreme court, and is of no precedential value. *See In re the Marriage of Worcester*, 270 Ariz. Adv. Rep. 65, 960 P.2d 624 (1998).[5]

¶ 16 Father also relies on a Kansas case cited in the vacated *Worcester* opinion, *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (Kan.1989). The *Ross* court, relying on *Ban v. Quigley*, held that the trial court had erred in refusing to hold a best interests hearing before ordering paternity testing of the presumptive father at the request of the biological mother. *Id.* at 339.[6] The court reasoned, "The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child." *Id.* at 338–39. We note that the *Ross* court relied on the Uniform Parentage Act, *see* 783 P.2d at 334, which has not been adopted in Arizona, although we have found its policies persuasive.

---

5. In its vacating opinion, the supreme court rejected a biological mother's challenge to her former husband's presumptive paternity of a child born during the marriage as "improperly presented to the trial court in a motion seeking relief from the [dissolution] decree pursuant to Rule 60(c)." *Id.* at 26, 960 P.2d at 626. The court pointed out that the mother had testified at the dissolution hearing and attested in the joint parenting plan that her former husband was indeed the child's father. Because she had "knowingly and intentionally perpetrated a fraud on another party and the court," she was not entitled to relief under the equitable provisions of Rule 60(c). *Id.*

Similarly, in this case, father has alleged that mother has "written multiple letters to Father, advising him that he is the father" of the child. Although several of these letters are included in father's special action appendices, we do not consider their content or validity because we have no indication in this record whether they were considered by the trial court. Father is not precluded, however, from presenting this evidence on remand to rebut mother's allegations of

fraud, duress, or mistake of fact pursuant to her Rule 60(c) motion.

We also note that mother has not sought to establish the paternity of any other father in this proceeding. The *Worcester* court also found this factor significant, observing, albeit in *dictum*, "We find no suggestion in the statutes that the court must or may permit the presumption to be rebutted unless the mother is seeking child support from another." *Id.* at 27, 960 P.2d at 627.

6. Procedurally, the mother's action was dismissed in *Ross*, but the guardian *ad litem* for the child proceeded on the motion for blood testing, arguing that it was in the child's best interest to obtain a determination of his biological father. 783 P.2d at 333. Although a guardian *ad litem* would not technically be considered a "stranger" to the family unit, in *Ross* the court found that the guardian *ad litem* had not adequately conducted an investigation to be able to represent the child's best interest at the hearing. 783 P.2d at 336. Thus, to the extent we categorized *Ross* in *Antonsen* as a case in which an "interloper" attempted to invade the family unit, we believe that analysis is correct.

*See Ban v. Quigley,* 168 Ariz. at 199, 812 P.2d at 1017. Although we agree with the *Ross* court's observation, we are compelled to follow the policies set forth by our legislature in this area.

¶ 17 Our statutory scheme provides that a mother may commence a proceeding to establish paternity. Ariz.Rev.Stat. (A.R.S. § ) § 25–803(A)(1). After paternity is established, the court may address custody and visitation issues. A.R.S. § 25–803(B). If father has established paternity, custody and visitation are determined pursuant to A.R.S. § 25–408. A.R.S. § 25–803(B). Any modification of the child's custody and visitation necessarily includes an examination of the child's best interests at that time. A.R.S. § 25–408(B); A.R.S. § 25–403(A). If, however, mother establishes father's nonpaternity, father may still seek to retain custody as a nonparent pursuant to A.R.S. § 25–415, which also necessitates an inquiry into the child's best interests. A.R.S. § 25–415(B)(C). Thus, the legislature has adequately provided for an inquiry into the best interests of the child, regardless of the paternity determination, and has determined that the issue will be addressed once a paternity determination is made upon request of a proper party.[7] As we noted in *Antonsen,* "the legislature, by definitively narrowing the category of who can be a 'party' to a paternity proceeding, has thereby implicitly determined who has 'good cause' to request mandatory paternity testing...." 186 Ariz. at 7, 918 P.2d at 209. Similarly, the legislature, by providing for a paternity determination upon the request of a presumptive parent prior to a custody or visitation determination based on the child's best interests, has not mandated a best interests hearing prior to paternity testing. *Accord R.A.J. v. L.B.V.,* 169 Ariz. 92, 96, 817 P.2d at 37, 41 (App. 1991).

¶ 18 In this case, where the biological mother of the child challenges the paternity of the presumed father, we cannot conclude that the trial court abused its discretion in not holding an evidentiary hearing on the best interests of the child prior to granting mother's motion for paternity testing. Although we certainly disagree with the trial court's reasoning that father and the child did not constitute a "family unit," we cannot fault the court's legal conclusion that a best interests hearing was not required prior to paternity testing under these circumstances.

## 2. Collateral Attack on Prior Acknowledgement of Paternity

¶ 19 Father also challenges the trial court's paternity testing order on the basis that it allows mother to make a statutorily impermissible collateral attack on her prior acknowledgement of father's paternity. The trial court's ruling explicitly rejected this argument because mother had alleged her affidavit was "a forgery and the court must disregard it at this point." That ruling also explicitly rejected father's argument that, from the face of that affidavit, father was a "presumptive parent," because of the "suspect" nature of the affidavit as well as the fact that father and mother were never married. We conclude that the trial court misapplied the burden of proof and failed to consider the statutory presumptions that apply in this case.

¶ 20 Mother contends that father is not entitled to a statutory presumption of paternity because the parties were never married, and because father failed to comply with the following provisions of former A.R.S. § 12–852,[8] in effect at the time father acknowledged paternity:

7. We do not address whether the child should be made a party to these proceedings at that time and have a guardian *ad litem* appointed to protect her interests. We have pointed out in the past that conflicts of interest between the presumptive parents may mandate such a procedure. *See R.A.J. v. L.B.V.,* 169 Ariz. 92, 96–97, 817 P.2d 37, 41–42 (App.1991).

8. Former A.R.S. § 12–852, to which father and the trial court refer, was renumbered as A.R.S. § 25–812 by Laws 1996, ch. 192, § 24. The version quoted here was prior to the amendment by Laws 1997, ch. 219, § 39, which added subsections that are discussed *infra.* Our analysis assumes, without deciding, that the statutory scheme in effect at the time of its execution applies to the affidavit of acknowledgement of paternity and that the statutory scheme in effect at the time of its filing applies to mother's court challenge of that acknowledgement. We would not reach a contrary result, however, by applica-

A. This state or the parent of a child born out of wedlock may establish the paternity of a child by filing one of the following with the clerk of the superior court:

1. A birth certificate signed by the mother and father of a child born out of wedlock.

2. A notarized statement signed by both parents acknowledging paternity or separate substantially similar notarized statements acknowledging paternity.

3. An agreement by the parents to be bound by the results of genetic testing including any genetic test previously accepted by a court of competent jurisdiction, or any combination of genetic testing agreed upon by the parties, and an affidavit from a certified laboratory that the tested father has been excluded.

4. A birth certificate accompanied by the statement authorized under subsection D of this section.

B. On filing a document required in subsection A of this section with the clerk of the superior court, the clerk shall issue an order establishing paternity, which shall include the social security number of the parents.

C. On entry of an order by the clerk of the superior court, the paternity determination has the same force and effect as a judgment of the superior court.

D. If the birth of a child born out of wedlock occurs in a health care institution, the mother and father may sign a written, notarized statement acknowledging the father's paternity. This statement shall ac-

tion of any of the subsequent amended versions of the applicable statutes to this case.

9. After its renumbering as A.R.S § 25–812, this section was amended by Laws 1996, ch. 170, § 2. effective July 20, 1996, after father's acknowledgement of paternity, to allow challenge to that acknowledgement pursuant to Rule 60(c), Arizona Rules of Civil Procedure. It was subsequently amended in 1997 to its current version, which now provides an additional, alternative way to establish paternity that blends the former provisions:

This state or the parent of a child born out of wedlock may establish paternity by filing with the department of health services pursuant to

company the certificate of live birth filed pursuant to § 36–322.

Former A.R.S. § 12–852 (1994).[9]

¶21 Mother asserts that father failed to file with the superior court either the signed birth certificate or the acknowledgement of paternity, that he never obtained an order of paternity from the court, and that he thus failed to obtain a paternity determination that has the force and effect of a judgment from the superior court.

¶22 We note, however, when the affidavit of acknowledgement of paternity was executed in 1996, the statutory scheme provided, and presently provides, the following presumption:

A. A man is presumed to be the father of the child if:

. . . .

3. A birth certificate is signed by the mother and father of a child born out of wedlock.

4. A notarized statement is signed by both parents acknowledging paternity or separate substantially similar notarized statements are signed acknowledging paternity.

. . . .

C. Any presumption under this section shall be rebutted by clear and convincing evidence. . . .

A.R.S. § 25–814. No requirement of filing a document with the superior court is mandated for this presumption to attach.

¶23 Additionally, at that time, the following provision existed regarding the filing of a birth certificate:

§ 36–322 either a notarized statement that contains the social security numbers of both parents, that is signed by both parents and that acknowledges paternity or by separate but substantially similar notarized statements that acknowledge paternity. A notarized statement that acknowledges paternity may be filed with the department of economic security. These statements shall be transmitted to the department of health services. A statement made pursuant to this subsection is a determination of paternity and has the same force and effect as a superior court judgment.

A.R.S. § 25–812(D) (1997).

If the mother of a child is unmarried at the time of birth of the child and was unmarried throughout the ten months immediately preceding such birth, the name of the alleged father, if any, shall not be entered on the birth certificate unless sworn statements acknowledging such paternity are voluntarily presented by both the alleged father and the mother, or unless paternity has been established by a court of competent jurisdiction.

A.R.S. § 36–322(G) (1994).[10] Thus, the legislature envisioned that either a sworn acknowledgement or a court order was sufficient to establish paternity on the child's birth certificate.

¶ 24 The fact that father did not additionally pursue the alternative procedure of filing these documents with the superior court did not deprive him of his paternity presumption otherwise acquired under these alternative statutes. This conclusion is bolstered, in our opinion, by the legislature's subsequent 1997 amendment to § 25–812 to add subsection D, which now specifically provides an alternative procedure to acknowledge paternity, and which constitutes a blending of these former provisions. *See* note 10, *supra.*

¶ 25 At the time mother filed her challenge to father's voluntary acknowledgement of paternity, on January 21, 1998, the following statutory procedure was available to her:

The mother, father or child, or a party to the proceeding on a Rule 60(c) motion may challenge a voluntary acknowledgement of paternity at any time after the sixty day period [for rescission, provided in subsection H] only on the basis of fraud, duress or material mistake of fact, with the burden of proof on the challenger and under which the legal responsibilities, including child support obligations of any signatory arising from the acknowledgement shall not be suspended during the challenge except for good cause shown. The court shall order the mother, her child or children and the alleged father to submit to genetic testing and shall direct that appropriate testing procedures determine the inherited characteristics, including blood and tissue type. If the court finds by clear and convincing evidence that the genetic tests demonstrate that the established father is not the biological father of the child, the court shall vacate the determination of paternity and terminate the obligation of that party to pay ongoing child support.

A.R.S. § 25–812(E) (1997).

¶ 26 Father contends, and we agree, that, at a minimum, this statutory scheme presumes that a purported voluntary acknowledgement of paternity is valid and binding until proven otherwise. The legislature has conferred on an affidavit of acknowledgement of paternity a presumption of validity, which may be rebutted only by clear and convincing evidence, and has strictly limited the avenues of collateral attack on such a determination to only those involving "fraud, duress or material mistake of fact." [11]

10. Effective July 20, 1996, two months after the affidavit of paternity was executed, the legislature amended this section to provide:

If the mother of a child is unmarried at the time of birth of the child and was unmarried throughout the ten months immediately preceding the birth, the name of the alleged father, if any shall not be entered on the birth certificate unless sworn statements that comply with § 25–812, subsection A, paragraph 2 acknowledging paternity are voluntarily presented by both the alleged father and the mother, or unless paternity has been established by a court of competent jurisdiction. The voluntary acknowledgement of paternity that is made pursuant to this subsection is a determination of paternity and has the same force and effect as a judgment of the superior court, except that:
1. The mother or the alleged father may rescind the acknowledgement at any time within sixty days after presenting the statement acknowledging paternity by filing with the department of economic security a notarized rescission of paternity on a form provided by the department. The department of economic security shall provide a copy of each rescission of paternity to the state registrar.
2. A person may challenge a paternity determination pursuant to § 25–812, subsection D.
A.R.S. § 36–322(F) (1996). Under both this version, and the subsequent 1997 amendments to current A.R.S. § 36–322(F), Laws 1997, ch. 155, § 1, and ch. 219, § 45, an affidavit of acknowledgement of paternity acquired the force and effect of a superior court judgment, without the necessity of obtaining a court order pursuant to A.R.S § 12–812(B) (1996).

11. The current limitations in A.R.S. § 25–812(E) were recently imposed. *See* Laws 1997, ch. 219, § 39. The prior version of this statute, former

¶ 27 Here, the trial court ignored the statutorily mandated burden of proof imposed on mother as the party challenging the validity of the acknowledgement. Instead, the court accepted as true mother's bare allegations that the voluntary acknowledgement of paternity was "suspect" because it was challenged as a "forgery" and concluded, erroneously, that "the court must disregard it at this point." By failing to afford to father the statutory presumption to which he was entitled pursuant to A.R.S. § 25–814(A)(4), the court allowed mother to collaterally attack father's presumed paternity without first factually establishing the threshold statutory grounds of fraud, duress, or material mistake of fact by a Rule 60(c) evidentiary hearing. We conclude that this cannot be what the legislature intended.

■■■ ¶ 28 Although A.R.S. § 25–812(E) provides for mandatory genetic testing on motion of a party to a proceeding challenging a voluntary acknowledgement of paternity, the statute explicitly places the burden of proof on the challenger, and therefore implicitly requires an evidentiary showing, beyond just a mere allegation, of a permissible basis for such a challenge. *See, e.g., Eymard v. Terrebonne*, 560 So.2d 887 (La.App.1990) (father did not carry evidentiary burden to prove that signature on affidavit of paternity was either forged or obtained through duress). Indeed, even before these statutory restrictions existed, we historically prohibited a collateral attack on a prior determination of paternity, absent an evidentiary showing that the prior determination was "the product of extrinsic fraud" by "affirmative proof of irregularity." *Bill By and Through Bill v. Gossett*, 132 Ariz. 518, 520, 647 P.2d 649, 651 (App.1982).

■■ ¶ 29 We conclude that, on this record, mother's bare allegations that her signature was "forged" and that father is not the biological parent of the child are insufficient, standing alone, to meet her burden of proof to establish grounds of fraud, duress, or ma-

terial mistake of fact that would enable the court to order mandatory paternity testing pursuant to A.R.S. § 25–812(E). Unless mother makes such an evidentiary showing to establish a threshold basis for relief from the presumption of the validity of the affidavit of acknowledgement of paternity, father's statutory presumption of paternity precludes the trial court from ordering mandatory genetic testing over father's objection. Any other interpretation of A.R.S. § 25–812(E) would defeat the legislature's clear intent to narrow an untimely collateral attack on another person's statutorily presumed paternity.

■■ ¶ 30 Mother cites the rebuttable presumption in A.R.S. § 25–415(B) that it is in the child's best interest to award custody to her, as the legal parent. That presumption, however, applies only when "a person other than a child's legal parent is seeking custody," and not when, as here, father is the presumed "legal parent" of the child as the presumed biological father. *See* A.R.S. § 25–415(G)(2) ("Legal parent" means "a biological or adoptive parent whose parental rights have not been terminated").

■■ ¶ 31 Mother further argues that the prior custody order entered by the superior court "found that the child's biological father is unknown," and that this judicially-established fact should preclude father's allegation of paternity. That order, however, was entered on April 29, 1996, prior to execution of the affidavit of acknowledgement of paternity on May 15, 1996, and was not based on a evidentiary showing but only on a stipulation by the parties that mother "does not know with certainty the identity of the biological father of the minor child, and that paternity of the child has not been established by a court of law." Even that stipulation, on its face, does not preclude father's assertion of paternity. Furthermore, mother has not, in any of these proceedings, even alleged the identity of another potential biological father, nor does the prior order establish another

---

A.R.S. § 25–812(D), allowed an action to challenge a voluntary acknowledgement of paternity on any ground "[p]ursuant to rule 60(c) of the Arizona rules of civil procedure...." *See* Laws 1996, ch. 170, § 2. This amendment appears to

exhibit the legislature's intent to more narrowly restrict collateral attacks on voluntary acknowledgements of paternity that are not timely rescinded.

person's paternity. We therefore conclude that the prior custody order has no preclusive effect in the current paternity and custody proceedings.

¶ 32 Mother also points out that, under the Indian Child Welfare Act, 25 U.S.C. §§ 1901 *et seq.*, a nonblood relative has no standing under federal law to seek custody of the child. Again, because mother has failed to meet her threshold burden to establish grounds to entitle her to rebut the clear statutory presumption in this case that father is the biological parent, those provisions have no relevance at this point in the proceedings. *See* 25 U.S.C. § 1903(9) (" 'parent' means any biological parent or parents of an Indian child. . . . It does not include the unwed father where paternity has not been *acknowledged* or established") (emphasis added).[12]

¶ 33 We therefore agree with father that the trial court abused its discretion in ordering the parties to submit to genetic testing without first holding an evidentiary hearing to require mother to establish grounds of fraud, duress, or material mistake of fact under Rule 60(c).[13] Until mother makes an evidentiary showing of such grounds, with an opportunity for father to rebut it, father's presumption of paternity prevents the mandatory testing mother seeks under A.R.S. § 25–812(E).

¶ 34 For the foregoing reasons, we vacate the order requiring the parties to submit to paternity testing.[14] This matter is remanded for an evidentiary hearing in which mother must establish grounds to entitle her to relief under Rule 60(c), in accordance with A.R.S. § 25–812(E), before paternity testing may be required.

¶ 35 Jurisdiction accepted; relief granted.

PATTERSON and EHRLICH, JJ., concur.

---

12. The child's tribe has moved to file a response as amicus curiae in this special action. For the reasons discussed herein, we find premature the tribe's involvement in a challenge to the order for paternity testing, where custody of the child is not yet an issue. Furthermore, the tribe had not intervened in the trial court proceedings before this order was issued. We have therefore denied that motion.

13. Father also argues that mother's challenge on Rule 60(c) grounds of fraud, duress, or material mistake of fact is untimely because not brought within six months. Because we find no indication in the record that this argument was made in the trial court, we do not address it for the first time in this special action, without prejudice to father's right to make this argument on remand.

14. We note that the trial court ordered the parties to submit to testing by September 2, 1998.

No request for a stay of that order was filed in this court, and we cannot tell from the limited record before us whether the trial court stayed the order during the pendency of this special action.

In the event that the testing has already been performed, we direct the trial court to seal the results. If mother establishes grounds for relief under Rule 60(c), based on fraud, duress, or material mistake of fact, pursuant to A.R.S. § 25–812(E), the trial court may, in its discretion, order the results unsealed to prevent unnecessary duplicative testing at further expense to the parties. *See Antonsen*, 186 Ariz. at 8 n. 6, 918 P.2d at 210 n. 6. If, however, mother is unable to meet her evidentiary burden, the trial court is directed to keep the results sealed and deem them inadmissible in the custody proceeding.