NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFFERRY CHOATE, *Petitioner/Appellant,*

*v.*

BRITTNEY COCHRAN, *Respondent/Appellee.*

No. 1 CA-CV 14-0687 FC
FILED 12-15-2015

Appeal from the Superior Court in Maricopa County
No. FC2014-004844
The Honorable Michael J. Herrod, Judge

**REVERSED AND REMANDED**

COUNSEL

Kuipers Law, PLLC, Phoenix
By Benjamin S. Kuipers
*Counsel for Petitioner/Appellant*

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

**T H O M P S O N**, Judge:

¶1          This is a paternity action.  Jeffery Choate (Choate) appeals from the trial court's dismissal of his Petition for Court Order for Paternity, Legal Decision Making, Parenting Time and Child Support.   Finding the trial court erred in dismissing his paternity action, we reverse and remand with instructions to the trial court to proceed with the determinations for legal decision making, parenting time, and child support.

FACTUAL AND PROCEDURAL HISTORY

¶2          The following facts are primarily taken from Choate's opening brief and the court-appointed advisor's report.  Daughter was born in February 2012.  Choate was present at daughter's birth, his name is on her birth certificate, and daughter bears his last name.  Choate and mother were never married, but they dated for approximately one year prior to daughter's birth and, thereafter, the three lived together as a family unit.  Mother told Choate, and he believed, that he was the biological father of daughter.  Choate contributed to the financial support of their family.  At some point the parties executed a Voluntary Acknowledgement of Paternity.[1]

¶3          In March 2014, mother began seeing an old boyfriend.  She moved out of the home with daughter.  For the next two months mother and Choate shared equal parenting time.  In May 2014, mother stopped allowing Choate visitation.  Choate filed a Petition for Court Order for Paternity, Legal Decision Making, Parenting Time and Child Support.  In his verified petition, Choate asserted that he was the father of daughter and he sought sole legal decision-making over daughter with parenting time to mother, a ruling that mother's boyfriend not be allowed around daughter, and drug testing of mother.  Choate then filed a motion for Temporary Orders to that effect.  At the hearing on the temporary orders, mother apparently asserted that Choate was not daughter's biological father.

---

[1] The completed Acknowledgement does not appear in our record.  The fact that such a document does exist, and that such acknowledgment occurred more than sixty days prior to this action, is clear from the trial court's minute entry of October 13, 2014.  Nor did mother in her Response to the Motion for Reconsideration deny the existence of it.  Additionally, we note the record on appeal contains several notarized letters from friends, family and coworkers in support of Choate.  Two of the notarized letters were from his former boss and former coworker, both of whom indicated that they had been witnesses to the Acknowledgment.

¶4        The court ordered paternity testing and Choate was excluded as the biological father.  At the Resolution Management Conference, the Best Interests attorney presented her findings and recommendations, although those are not in the record before us.  The record on appeal does include the Court-Appointed Advisor's Report.  That report states, based on an interview with mother, that "Mother stated that she has regret that she allowed Father to believe he was the biological father when she knew all along that he was not.  She explained that she was hopeful that their relationship would sustain and that she could keep the secret."  Mother stated she had stayed in the relationship with Choate "for the benefit of the child." The man mother believed was the biological father had met daughter once, and had since "violated probation and [was] back in prison."

¶5        The court made a finding "that, although Petitioner was presumed to be the father under A.R.S. § 25-814, the presumption has been rebutted by the results of the paternity test" and it dismissed the petition. Father filed a motion for reconsideration to which mother responded on the basis of the paternity test and what she alleged was father's late challenge to her late attempt to rescind the Acknowledgment.  The trial court did not reconsider its decision, it stated that under Arizona Revised Statutes (A.R.S.) § 25-812(E) mother was entitled to untimely withdraw her prior voluntary acknowledgement of paternity, because "[i]dentifying the wrong potential father on the acknowledgement is a material mistake of fact."  This appeal followed.

## DISCUSSION

¶6        On appeal, Choate asserts that:

1. Given that the presumption of paternity in Choate's favor due to his name being listed as father on the birth certificate and the execution of a voluntary acknowledgement of paternity by both parents, the trial court erred in ordering paternity testing, and then by disestablishing his paternity solely on the results of that test without an evidentiary or best interests hearing; and

2. Mother was not entitled to make an untimely withdrawal of her acknowledgment of paternity on the basis of a mistake of fact as to who the biological father was.

¶7        Choate asserts that under *In re Marriage of Worcester*, 192 Ariz. 24, 960 P.2d 624 (1998), the trial court erred in dismissing his paternity case.

We agree. *Worcester* concerned a divorce decree where mother raised an untimely assertion that her former husband was not actually the biological father of the child listed in the divorce papers she had stipulated to. *Id.* at 25, ¶ 1, 960 P.2d at 625. The husband, operating under the presumption of paternity arising from marriage, objected to a change in paternity even in the face of mother providing blood tests that another man was the child's father. *Id.* at 25-26, ¶ 3, 960 P.2d at 625-26. The trial court set aside the part of the divorce decree finding the child was husband's issue. *Id.* at 25, ¶ 3, 960 P.2d at 625. The court of appeals reversed and remanded for "a determination of whether an adjudication of biological paternity is in [child's] best interests."[2] *Id.* at ¶ 4. Our supreme court also reversed the trial court, but vacated the court of appeals "best interests" decision on two separate bases: the summary manner that the trial court severed husband's parental rights and mother's inability to avail herself of Arizona Rule of Civil Procedure 60(c) relief. *Id.* at 27, ¶¶ 9-10, 960 P.2d at 627. We, likewise, find each of those reasons would mandate reversal in favor of Choate.

**¶8** "A voluntary acknowledgment of paternity . . . is a determination of paternity and has the same force and effect as a superior court judgment." A.R.S. § 25-812(D) (2010).[3] The *Worcester* court found that

---

[2] In *Ban v. Quigley*, 168 Ariz. 196, 199-200, 812 P.2d 1014, 1017-18 (1992), this court determined that a trial court could not order blood testing on the request of the putative father over the objection of the statutorily presumed father without conducting a "best interests" hearing. Our court cited with approval a Washington court's decision that "a child's best interests may be better served by maintaining a stable existing family relationship, rather than allowing a paternity action to proceed . . . keeping in mind that the child's interests are paramount" and a Massachusetts ruling that the "trial court should look at such things as emotional bonds, economic support, custody of the child, the extent of the personal association, the commitment of the putative father to attending to the child's needs, the consistency of the putative father's expressed interest, the child's name, the names listed on the birth certificate, and any other factors which bear on the nature of the alleged parent-child relationship." *Id.* (*Internal quotes omitted.*)

[3] Section 25-812. "Voluntary acknowledgment of paternity; action to overcome paternity"

> A. This state or the parent of a child born out of wedlock may establish the paternity of a child by filing one of the following with the clerk of the superior court, the department of economic security or the department of health services:

that mother had "intentionally misrepresented the facts under oath to the court regarding [child's] parentage, confirmed under oath as true the facts upon which the decree and the shared custody agreement were based, and therefore was not entitled to relief" under Rule 60(c). *Id.* at ¶ 5. Rule 60(c) provides relief when mistakes or errors occur in a judgment despite a person's diligent efforts to comply with rules. *City of Phoenix v. Geyler*, 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985). Errors arising from neglect, inadvertence, or forgetfulness, without a reasonable excuse, will not satisfy the rule. *Daou v. Harris*, 139 Ariz. 353, 360, 678 P.2d 934, 941 (1984). Likewise, a party that has knowingly and intentionally perpetrated a fraud

---

1. A notarized or witnessed statement that contains the social security numbers of both parents and that is signed by both parents acknowledging paternity or two separate substantially similar notarized or witnessed statements acknowledging paternity. . .

B. On filing a document required in subsection A of this section with the clerk of the superior court, the clerk or authorized court personnel shall issue an order establishing paternity, which may amend the name of the child or children, if requested by the parents. The clerk shall transmit a copy of the order of paternity to the department of health services and the department of economic security.

C. On entry of an order by the clerk of the superior court, the paternity determination has the same force and effect as a judgment of the superior court. . . .

…

H. The mother or the father may rescind the acknowledgment of paternity within the earlier of:

1. Sixty days after the last signature is affixed to the notarized acknowledgment of paternity that is filed with the department of economic security, the department of health services or the clerk of the court.

2. The date of a proceeding relating to the child, including a child support proceeding in which the mother or father is a party.

I. A rescission authorized pursuant to subsection H of this section must be in writing and a copy of each rescission of paternity shall be filed with the department of economic security. . . .

on another party, and the court, is not entitled to relief under Rule 60(c). *See Bateman v. McDonald*, 94 Ariz. 327, 329, 385 P.2d 208, 210 (1963). The *Worcester* court stated a mother "is simply not in a position to claim extraordinary circumstances of hardship or injustice, having brought the circumstances upon herself." 192 Ariz. at 26, ¶ 6, 960 P.2d at 626.

**¶9** The mother in this matter acted similarly. Not only did mother have Choate's name placed on the birth certificate and enter into a voluntary legal acknowledgment of his fatherhood, she admitted engaging in the long term deception of Choate that resulted in him actively financially and emotionally fathering daughter. Given that mother admitted that "she allowed Father to believe he was the biological father when she knew all along that he was not . . . [and that] she was hopeful that their relationship would sustain and that she could keep the secret," we can find no factual basis to sustain the court's ruling that there was a mistake of fact as to whether Choate was the biological father. *See Worcester*, 192 Ariz. at 26, ¶ 6, 960 P.2d at 626. We, likewise, find that the mother in this matter is not entitled to challenge the voluntary acknowledgment of paternity. More than the maximum statutory sixty days had passed and mother was not entitled, given her admission to the court appointed advisor that she knew all along Choate wasn't the biological father, to the benefit of now claiming a mistake under Rule 60(c).

**¶10** Even if the matter were not reversible due to mother's intentional deceit, we would reverse on the summary manner in which the trial court severed Choate's existing legal status. Parental rights are substantive rights created by statute. *See Worcester*, 192 Ariz. at 27, ¶ 9, 960 P.2d at 627 (citing *Daou*, 139 Ariz. at 357, 678 P.2d at 938). Choate is presumed, by statute, to be the legal the father of daughter. *See* A.R.S. § 25-814(A)(1), (3), (4);[4] A.R.S. § 25-812(D). There was no timely rescinding of

---

[4] Section 25-814. "Presumption of paternity" provides in relevant part:

A. A man is presumed to be the father of the child if:

…

3. A birth certificate is signed by the mother and father of a child born out of wedlock.
4. A notarized or witnessed statement is signed by both parents acknowledging paternity or separate substantially similar notarized or witnessed statements are signed by both parents acknowledging paternity.

…

the voluntary acknowledgement of paternity. This untimely attempt to change Choate's paternity status was driven by mother in conjunction with her denial of visitation.

¶11      In *Stephenson v. Nastro*, this court held that mother's "bare allegation" that the father was not the biological parent off the child along with her allegation that her voluntary acknowledgement was forged was insufficient grounds to meet her burden under Rule 60(c) to enable the trial court to order mandatory paternity testing. 192 Ariz. 475, 484, 967 P.2d 616, 625 (App. 1998) (granting father named on birth certificate and in voluntary acknowledgement of paternity special action relief from paternity testing before mother had shown fraud, duress or mistake). This is not a matter where another man is seeking to actively father daughter or another court has established someone else as the father. *See* A.R.S. § 25-814(C); s*ee, e.g., Worcester*, 192 Ariz. at 27, ¶ 8, 960 P.2d at 627. As in *Worcester*, "the request to eliminate Donald as K.'s father was not sought by or on behalf of K., but rather by Pammela for reasons of her own, and no request has been made by anyone else to establish [K.'s] birthright and parentage." *Id.* at 27, ¶ 8, 10, 960 P.2d at 627.

¶12      Here we have no evidence of who daughter's biological parent is. Even if we had, the fact of another man's biological paternity, is insufficient alone to "disestablish [] paternity." *See Worcester*, 192 Ariz. at 26, ¶ 4, fn. 2, 960 P.2d at 626. To change the legal status of Choate requires more than a mere best interests finding.

> Section 8–533 provides the method for, and the reasons justifying, terminating a parent-child relationship, none of which was alleged here. The statute does not enumerate proof of nonpaternity, by itself, as a ground justifying terminating a father-child relationship.

*Id.* at 27, ¶ 8, 10, 960 P.2d at 627. Any change to Choate's legal status could occur only via termination of his parental rights as provided for under the statutes.

¶13      We further disagree with the trial court's conclusion that mother met her clear and convincing evidence burden of proof "by the

C. Any presumption under this section shall be rebutted by clear and convincing evidence. . . . *A court decree establishing paternity of the child by another man rebuts the presumption*. (Emphasis added.)

results of the genetic testing." Our supreme court held "nonpaternity, by itself" is not a ground for such a status change. *Id*. at 27, ¶ 9, 960 P.2d at 627. "We find no suggestion in the statutes that the court must or may permit the presumption [of paternity] to be rebutted [under A.R.S. § 25-814(C)] unless the mother is seeking child support from another." *Id.* at 27, ¶ 7, 10, 960 P.2d at 627. Such is not the case here, mother merely wants Choate removed as a parent. Public policy will not support the removal of a man willingly and actively engaged in the parenting of a child in order to leave her fatherless.

## CONCLUSION

**¶14** For the above stated reasons, we reverse the trial court's dismissal of Choate's Petition for Paternity. On remand, we direct the trial court to proceed with the requested determinations for legal decision making, parenting time, and child support.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama